UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **JULIA JACKSON,** **Plaintiff** | : | **CIVIL ACTION NO. 3:02CV1777(AHN)** |
| **v.** | : | |
| **NORWALK BOARD OF EDUCATION, LOUIS LaBOSCO, DR. NORMAN ZAMCHECK, ART DOOLEY, and RICK FOLLMAN** **Defendants** | : | **FEBRUARY 13, 2004** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

The plaintiff, Julia Jackson, alleges that she was hired as a security monitor by defendant Norwalk Board of Education ("the Board") at its Briggs High School on or about March 6, 2000. As a new employee, the plaintiff was placed in a 90 day probationary period. Upon expiration of this probationary period, the plaintiff would have become a regular, permanent employee. On June 6, 2000, the plaintiff met with Briggs High School Principal Norman Zamcheck to discuss her employee evaluation and the reasons why he recommended that she not be rehired for the next school year. In a letter dated June 6, 2000, the Board's then-Director of Human Resources, defendant Louis LaBosco (now deceased), informed her that her probationary period had expired

and that her employment would not be renewed for the 2000-2001 school year. The plaintiff remained in this position for the rest of the school year, until June 16, 2000. On July 27, 2000, the plaintiff applied for a security guard/monitor position at the Board's Norwalk High School. She was interviewed thereafter by defendant Art Dooley, Head of Security for the Norwalk Public Schools, and Richard Follman, Housemaster at Norwalk High School. The plaintiff did not receive the Norwalk High School position. The position was filled by a female candidate of African-American descent who was deemed to be more qualified than the plaintiff.

Following the court's ruling on the defendants' motion to dismiss, and the filing of a subsequent amended complaint, the plaintiff now brings a three count complaint against defendants Norwalk Board of Education, LaBosco, Dooley, Follman and Zamcheck. The plaintiff claims that as a result of the defendants' actions with regard to her employment (e.g., non-renewal of her employment, disparate work conditions, and a refusal to hire her for a position at Norwalk High School), she was subject to discrimination on the basis of her race and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq. [Count One] and Connecticut General Statutes §46a-60. [Count Three] The plaintiff further claims that the defendants' actions were in violation of the Equal Protection Clause of the U.S. Constitution. [Count Two] The claims in Counts One and Three are only brought against defendant Norwalk Board of Education.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendants now move for summary judgment.

## II. FACTS

*See* "Local Rule 56(a)(1) Statement," annexed hereto.

## III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted where the moving party sustains its burden of showing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). *See also* Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552 (1986). "If the party opposing summary judgment 'generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate.'" National Union Fire Insurance Co. v. Turtur, 892 F. 2d 199, 203 (2nd Cir. 1989), *quoting* Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 762 (2nd Cir. 1983). Nevertheless, the "mere existence of factual issues - where those issues are not material to the claims before the court - will not suffice to defeat a motion for summary judgment." Quarles v. General Motors Corporation (Motor Holding Division), 758 F.2d 839, 840 (2nd Cir. 1985). Furthermore, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986) (emphasis in original).

Once a moving party has made a showing that there are no material issues of facts in dispute, "mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." Quarles v. General Motors Corporation, 758 F.2d at 840. When the underlying events in a case are not in genuine dispute but their characterization and application of a legal test are disputed, the contested issue may still be one for the court vis-à-vis summary judgment procedures. Newell Companies, Inc. v. Kenney Manufacturing Company, 864 F.2d 757, 763 (Fed. Cir. 1988), *cert. denied,* 493 U.S. 814, 110 S.Ct. 62 (1989). In considering the propriety of the granting of summary judgment, the U.S. Supreme Court has stated: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules [of Civil Procedure] as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. at 327, 106 S.Ct. at 2555, *quoting* Fed. R. Civ. P. 1. While the courts have generally cautioned against utilizing summary judgment proceedings for resolving claims of intentional discrimination, a court may nevertheless may grant summary judgment if it finds that there is no evidence that would support a jury's finding that a defendant's proffered reason for its employment actions was a pretext for unlawful discrimination, or that the plaintiff could satisfy her "ultimate burden of persuading the

trier of fact that the defendant intentionally discriminated against the plaintiff." Schnabel v. Abramson, 232 F.3d 83, 90 (2nd Cir. 2000) (citations omitted).

## IV. ARGUMENT

### A. THIS COURT SHOULD ENTER JUDGMENT FOR DEFENDANT NORWALK BOARD OF EDUCATION ON THE PLAINTIFF'S CLAIMS OF RACE AND GENDER DISCRIMINATION IN COUNTS ONE AND THREE BECAUSE THE PLAINTIFF HAS FAILED TO ESTABLISH A *PRIMA FACIE* CASE OF DISCRIMINATION.

The plaintiff brings her claims for gender and race discrimination against the Norwalk Board of Education pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e et seq), and Conn. Gen. Stat. §46a-60.[1] It is unlawful for an employer to take an adverse employment action against an employee based on an individual's gender or race. A plaintiff claiming disparate treatment can create an inference of discrimination using the burden-shifting method of proof set out by the U.S. Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). Under the McDonnell-Douglas framework, the plaintiff must first establish a *prima facie* case of discrimination. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-253, 101 S.Ct. 1089 (1981). In McDonnell Douglas, the Court held

[1] The Connecticut courts have relied upon federal case law in Title VII discriminatory treatment cases in deciding cases of alleged discrimination in employment under corresponding state statutes (Conn. Gen. Stat. §46a-60). *See, e.g.,* State of Connecticut v. Commission on Human Rights and Opportunities, 211 Conn. 464, 470, 550 A.2d 1120 (1989).

that in order to make out a *prima facie* case of discrimination, a plaintiff must establish that (i) that she belongs to a class protected by Title VII; (ii) that she was otherwise qualified for her position, and/or performing her job satisfactorily; (iii) that she was subject to an adverse employment action; and (iv) that such adverse action or treatment occurred under circumstances giving rise to an inference of discrimination. 411 U.S. at 802, 93 S.Ct. at 1824 (internal quotation marks and citations omitted); Schnabel v. Abramson, 232 F.3d 83, 87 (2nd Cir. 2000). *See also* Austin v. Ford Models, Inc., 149 F.3d 148, 152-153 (2nd Cir. 1998); McCulley v. Southern Connecticut Newspapers, Inc., 98 F. Supp. 2d 216, 222 (D. Conn. 2000).

The plaintiff in the burden-shifting analysis carries "the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under the Act." Furnco Construction Corp. v. Waters, 438 U.S. 567, 576, 98 S. Ct. 2943, 2949 (1978), *quoting* International Brotherhood of Teamsters v. United States, 431 U.S. 324, 358, 97 S. Ct. 1843, 1866 (1977). In order to prevail, the plaintiff must "prove by a preponderance of the evidence that the [employment action] *was actually motivated* in whole or in part by unlawful discrimination." Hawkins v. 1115 Legal Service Care, 163 F.3d 684, 694 (2nd Cir. 1998), *citing* Stern v. Trustees of Columbia University, 131 F.3d 305, 312 (2nd Cir. 1997). The purpose of this burden-shifting analysis is that the plaintiff must allege facts, which if true, could lead a trier of fact to reasonably infer intentional discrimination. Gay v. Waiters' and Dairy Lunchmen's

Union, 694 F.2d 531, 537 (9th Cir. 1982); Robinson v. Adams, 847 F.2d 1315, 1316 (9th Cir. 1987).

Nevertheless, the analysis set out by the U.S. Supreme Court in McDonnell Douglas in itself will not always give rise to an inference of discrimination. The test "was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence…on the critical question of discrimination." Furnco Construction Corp. v. Waters, 438 U.S. at 577, 98 S.Ct. at 2949. As the Second Circuit has noted, "the Supreme Court clarified that the McDonnell Douglas opinion described an 'appropriate model for a prima facie case of racial discrimination' but that the 'standard is not inflexible.'" Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2nd Cir. 1998), *quoting* Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 n. 6, 101 S. Ct 1089 (1981). As the Court in McDonnell Douglas noted, "[t]he facts necessarily will vary in Title VII cases, and the specification . . . of the prima facie proof required from [the plaintiff] is not necessarily applicable in every respect to differing factual situations." Id. at 802, n. 13, 93 S. Ct. at 1824.

The plaintiff cannot satisfy her *prima facie* burden. For purposes of this motion, the defendants will not dispute that the plaintiff has met the first and third prongs of this test. The plaintiff is a female and is an African American. She claims to have been subject to certain adverse employment decisions, i.e., being non-renewed from her job at the Briggs School in

2000, being subject to treatment that was different than similarly situated white and male employees and not being hired for the Norwalk High School position in August 2000. In making these claims, the plaintiff cannot satisfy the second prong, namely, that she was otherwise qualified for her position, and/or performing her job satisfactorily. In addition, the plaintiff fails to meet the fourth prong of the McDonnell-Douglas test, which requires that such adverse action or treatment occur under circumstances giving rise to an inference of discrimination. Schnabel v. Abramson, 232 F.3d at 87.

The fourth element of a *prima* facie case is satisfied by demonstrating that the plaintiff was treated differently than "similarly situated" persons. Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64 (2nd Cir. 1997); Etienne v. Wal-Mart Stores, 186 F.Supp.2d 129, 135 (D.Conn. 2001). *Cf.* Page v. Connecticut Department of Public Safety, 185 F.Supp.2d 149, 157 (D.Conn. 2002). "To be 'similarly situated,' the individuals with whom [the plaintiff] attempts to compare herself must be similarly situated in all material respects." Shumway v. United Parcel Service, Inc., *supra.* (Internal citations and quotations omitted). What constitutes "all material respects" is to be judged based on (1) whether the plaintiff and those she maintains are similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness. Norvill v. Staten Island University Hospital, 196 F.3d 89, 96 (2nd Cir. 1999). Thus, the plaintiff must prove that these other employees had qualifications "'similar to the plaintiff's.'" Norville v. Staten Island Univ. Hosp.,

196 F.3d at 96 (quoting Mazzella v. RCA Global Communications, Inc., 642 F. Supp. 1531, 1547 (S.D.N.Y. 1986), *aff'd*, 814 F.2d 653 (2d Cir. 1987)). It is important to remember that:

> "[e]mployees are not 'similarly situated' merely because their conduct might be analogized. Rather, in order to be similarly situated, other employees must have . . . been subject to the same standards governing performance [and] evaluation . . . without such differentiating or mitigating circumstances that would distinguish their conduct."

Cunliffe v. Sikorsky Aircraft Corp., 9 F. Supp.2d at 131 (quoting Francis v. Runyon, 928 F.Supp. 195, 203 (E.D.N.Y. 1996), quoting in turn Mazzella, 642 F. Supp. at 1547).

### 1. The Non-renewal of the Briggs High School Monitor Position

The plaintiff was hired to a position as a monitor at Briggs High School on or about March 6, 2000. The plaintiff's main duty as a monitor was to control the students, particularly as they passed between classes and while they took their breaks. It is noted, however, that Briggs High School is the city's "alternative" high school. The students at Briggs are there because they have had behavioral trouble at their regular high schools. ***Affidavits of Zamcheck and Dooley***. That fact only underscores the importance of the plaintiff's position as a monitor.

The plaintiff, however, had difficulty controlling the students from the very beginning. In order to properly supervise the students and prevent trouble from arising, it is necessary for the monitor to be constantly moving around the campus. She refused to patrol between the school's two main buildings during break time – a notorious time and place for trouble making for the students. Instead, the plaintiff preferred to "sit in a corner like a toll booth" and watch the

students walk by her. ***Affidavit of Zamcheck, ¶12.*** The plaintiff also shied away from controlling some of the more difficult students and told Art Dooley that she did not think she could handle these students. She appeared fearful of the students and as a result, they did not listen to her. ***Affidavit of Dooley, ¶16.***

In her evaluation, it was noted that the plaintiff had not sufficiently covered the areas between buildings or controlled the students during break times. ***Attachment E.*** In addition, it was noted that on several occasions, the plaintiff became overly excited and stressed with the students and was unable to establish control over a number of students. The plaintiff received unsatisfactory markings in the categories of "recognizes others' priorities" and being "proactive." ***Attachment E.***

Following the plaintiff's evaluation at the end of her probationary period, the decision was made to not re-hire the plaintiff for the 2000 – 2001 school year. ***See Attachment F; Affidavit of Zamcheck ¶ 14.*** On June 6, 2000, Ms. Jackson's position was non-renewed for her failure to perform at an adequate level in her work at Briggs High School. ***See Attachment F.***. The decision not to re-hire the plaintiff was made by Louis LaBosco, Director of Human Resources, at the recommendation of Dr. Norman Zamcheck, Principal at Briggs High School – the very same people who made the initial decision to <u>hire</u> the plaintiff. In fact, a few months earlier, at the time of her initial application for the monitor position at Briggs, it was Dr. Zamcheck who strongly supported her candidacy. When the person who made the decision to

fire was the same person who made the decision to hire, "it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." Grady v. Affiliated Central, Inc., 130 F.3d 553, 560 (2d Cir. 1997); LeBlanc v. Great American Insurance Co., 6 F.3d 836, 847 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398 (1994); Lowe v. J.B. Hunt Transport, Inc., 963 F.2d 173, 174-175 (8th Cir. 1992). Furthermore, a short period of time between the hiring and firing is also inconsistent with discrimination. Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991) ("[I]n cases where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer"). Here, the plaintiff's position was non-renewed on June 6, 2000 – only three short months after she was hired. Initially, Principal Zamcheck had strongly recommended that she be hired. Her race and gender certainly were known to him at the time of her hiring. It would be absurd to infer that during the course of three months he developed a bias against the plaintiff due to her race and gender. Thus, a strong inference exists that discrimination was not a determining factor for the non-renewal of plaintiff's position at Briggs High School. The only inference to be made, if any, is that the plaintiff simply did not perform her job satisfactorily. She is therefore unable to establish the second prong of her prima facie case that she was otherwise qualified for her position to be renewed.

2. **Disparate work conditions at Briggs High School**

As to the plaintiff's claims with regard to being subject to differing treatment, the plaintiff cannot establish that "similarly situated" males or non-African American employees were treated differently. Indeed, the plaintiff may claim in a conclusory manner that she was treated differently, but she cannot establish any actual different treatment. This is understandable, since the facts are to the contrary. In the context of her position at Briggs High School, the plaintiff claims that she was treated differently than similarly situated white and male monitors/security guards with respect to the following: her hours and benefits; notification of the 90-day probationary period; having a meeting prior to termination; and certain work conditions.

When plaintiff was hired to be a monitor at Briggs High School, she and all other applicants for the position were notified in the job posting that the position only called for 27.5 hours per week and that there were no benefits provided. ***Attachment B.*** Briggs High School had a shorter day than the other high schools in Norwalk and there was no need for a full-time monitor. ***Affidavit of Dooley, ¶ 13; Affidavit of Zamcheck, ¶ 4.*** Her work day started at 8:00 a.m. and ended at 2:00 p.m. with a half hour of unpaid lunch time each day. The benefits of insurance, longevity and holiday pay are only available to full-time, regular employees. The union contract applicable to her position defined part-time employment as "regular employees who work twenty (20) or more hours but less than forty (40) hours per week on a regular basis."

***Attachment D, p. 21***. Even if the plaintiff had worked 30 hours per week, as she alleges in her complaint, she would still be considered part-time and ineligible for benefits. Plaintiff's hours and lack of benefits are not evidence of any discriminatory act. They merely reflect what she bargained for when she took the position.

The plaintiff claims that she was treated differently than similarly situated employees because she was not notified of the 90-day probationary period. Although the letter of hire sent to plaintiff omitted a notification of the probationary period, any such oversight does not yield an inference of discrimination on the basis of race and gender. Pursuant to the union contract which defined all of her rights and responsibilities as a member of AFSCME, Local 1042, all new employees (not just the plaintiff) must serve a 90-day probationary period. ***Attachment D, p. 17***.

The plaintiff claims that she was treated differently than similarly situated white and male monitors/guards in that she was not afforded notification and a letter prior to her termination from employment. As a probationary employee, she is not entitled to the procedure that might be afforded to the regular, permanent employees. The union contract specifically provides that during the 90-day probationary period, the employer "may dismiss the employee without further recourse on the employee's part." ***Attachment D , pp. 17-18***. The plaintiff was not treated any differently than the other members of her union who were similarly situated (i.e., "new"/probationary employees).

The plaintiff claims that while working at Briggs she was subject to work conditions that were different from similarly situated white and male employees. First, she alleges that she was not provided a uniform like other monitors/guards. Uniforms are mandatory for the monitor position. The employee is expected to go to an approved vendor to be fitted for a uniform; the Norwalk Board of Education then pays for the uniform. The Board, however, does not provide the uniform. In addition, defendant Dooley has a practice of not requiring the employee to wear the uniform until he/she has successfully completed the probationary period. The plaintiff never completed her probationary period. The plaintiff thus was not treated any differently than other similarly situated individuals.

The plaintiff claims that she was not given a walkie-talkie. While it is true that most monitors and guards in other Norwalk schools use a walkie-talkie, it is a tool that is dependent upon the resources of the particular school. When the plaintiff started at Briggs High School, the school had two walkie-talkies that were broken and one that had been stolen. Her direct supervisor, defendant Zamcheck, the Principal at Briggs, avers that the plaintiff never requested a walkie-talkie. In addition, the current monitor at Briggs High School does not use a walkie-talkie. ***Affidavit of Dooley, ¶ 12.*** The plaintiff was the only monitor stationed at Briggs High School. She would have no need to contact other monitors or guards with the walkie-talkie because there were no others at that location. The fact that she was not given a walkie-talkie to use at Briggs clearly is not evidence of any discriminatory action.

The plaintiff claims that unlike other monitors/guards she was forced to eat lunch after school. First, the schedules for monitors and guards are always subject to the needs of supervising the students. Second, Briggs had a shortened school day and all the staff there ate lunch after the students left. The plaintiff was not treated differently than anyone else.

Finally, the plaintiff claims that she was not given the opportunity to be hired for a summer position. Pursuant to the AFSCME, Local 1042 contract, employees working security have the first chance to be selected for summer custodial positions. First, there is no indication that plaintiff ever inquired about getting a summer position. ***Affidavit of Dooley, ¶ 15***. Second, even if she had applied for a summer position, she would not be given first consideration because she was no longer an employee of the school system at the time the summer hiring would take place.

It is important to point out that the actor implicated in these matters of unequal treatment (defendant Dooley) is an African American male. As will be further discussed with regard to another one of the plaintiff's claims (the failure to hire her for the Norwalk High School position), defendant Dooley was responsible for hiring another African American female for a similar position. Furthermore, the Norwalk Board of Education has employed a significant number of minorities to work as monitors and security guards both historically and to the present date. In this context, it is absurd for the plaintiff to claim that the defendant Board's actions occurred "under circumstances giving rise to an inference of discrimination."

3. **The Norwalk High School Position**

On July 27, 2000, the plaintiff applied for a job opening for a guard/monitor position at Norwalk High School, a position similar to the one she had held at Briggs High School. Art Dooley, Head of Security and also an African-American and Richard Follman, Housemaster of Norwalk High School interviewed the plaintiff in early August of 2000. Other interviewees included Tia Perry, an African-American female, Deon Hardison, an African-American male, and James Dupre, another African-American male. ***See Attachment H***. After conducting the interviews, Dooley and Follman selected Tia Perry, an African-American female, for the position because she had a background and understanding in security and showed an ability to handle all types of teenagers. ***Id.***.

The plaintiff claims that she should have been given special consideration over Tia Perry because she was a Norwalk employee. In fact, at the time that plaintiff applied for the Norwalk High School position she was no longer an employee of the Norwalk Public Schools. Because her employment relationship ended on June 16, 2000, she was not entitled to be given any consideration over Tia Perry or any other candidate. Furthermore, even if she had some right to be given preferential consideration because of her prior employment, the failure to do so does not produce any inference of discrimination based upon race or gender because the candidate who was chosen, Tia Perry, is an African-American female. If any inference were to be made in this

situation, it is that she ultimately was not selected for the position *because* of her employment experiences with Norwalk and the poor performance she exhibited at Briggs High School.

The plaintiff cannot argue that the selection of Tia Perry (an African American female) for the monitor position at Norwalk High School is evidence of either race or gender discrimination. In fact, the plaintiff has failed to set forth a prima facie case of either race or gender discrimination under Title VII. As stated previously, to establish a prima facie case under Title VII, a plaintiff must show that (1) she is a member of a protected class; (2) she is qualified to hold the position, and/or performing her job satisfactorily; (3) she suffered an adverse employment action and (4) the adverse action occurred under circumstances that give rise to an inference of discrimination. In order to establish this fourth element, the plaintiff must show that she was treated differently from similarly situated employees outside of her protected class. *See* Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 258, 101 S.Ct. 1089 (1981). Here, the plaintiff cannot show that she was treated differently from similarly situated employees outside of her protected class because an employee from inside her protected class – an African-American female – was given the position! For this reason, and the fact that she was not qualified for the position in light of her prior misadventures at Briggs, the plaintiff is unable to establish a prima facie case of discrimination and her case must fail.

**B. THIS COURT SHOULD ALSO ENTER JUDGMENT FOR THE DEFENDANT BOARD ON COUNTS ONE AND THREE BECAUSE THE**

**DEFENDANT HAS PROFFERED LEGITIMATE NON-DISCRIMINATORY REASONS FOR ITS ACTIONS.**

Even if this court were to find that the plaintiff has established a *prima facie* case of discrimination, this court should still enter judgment for defendant Norwalk Board of Education, as the defendant has legitimate non-discriminatory reasons for its actions. In addition, the plaintiff has not and cannot establish that the defendants' proffered legitimate, non-discriminatory reasons for its actions were pretextual. According to the McDonnell Douglas/Burdine burden-shifting analysis, once the plaintiff has alleged a *prima facie* case of discrimination, the burden of production shifts to the defendant to offer a "legitimate, nondiscriminatory reason" for the employer's actions. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973). The defendant-employer does not have the burden of proof on this issue, only the burden of production. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 258-59, 101 S.Ct. 1089, 1096-97 (1981). The determination of whether the employer has met its burden of production "can involve no credibility assessment. For the burden-of-production determination necessarily *precedes* the credibility-assessment stage." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748 (1993) (emphasis in the original). It is not for this court to second guess the defendant's employment decisions; "the employer need not prove that the person promoted had superior objective qualifications, or that it made the wisest choice, but only that the reasons for the decision were

nondiscriminatory." Davis v. State University of New York, 802 F.2d 638, 641 (2nd Cir. 1986), *citing* Texas Department of Community Affairs v. Burdine, *supra*; Lieberman v. Grant, 630 F.2d 60, 65 (2nd Cir. 1980); Powell v. Syracuse University, 580 F.2d 1150, 1156-57 (2nd Cir.), *cert. denied*, 439 U.S. 984, 99 S.Ct. 576 (1978).

As indicated in the arguments made in section IV, subsection A, *supra*, the defendant Board had clear, non-discriminatory reasons for all of its actions with respect to plaintiff. The reason her position at Briggs High School was not renewed was due to her poor work performance during the 90-day probationary period. On the issue of disparate treatment while she was an employee at Briggs – her hours, benefits, notification of probation period, having a meeting prior to termination, uniform, walkie-talkie, lunch break, summer hiring, being given preference in hiring – as to all of these things, the plaintiff was treated no differently than any other member of her union and in a manner consistent with the terms of her union contract. The reason she was not hired for the Norwalk High School security guard position was because she was not the best candidate and had no right to be given preference over any other candidate. In addition, the successful candidate was also a female African American person, further displaying the non-discriminatory reasons for the defendant's actions! There are legitimate, non-discriminatory reasons for each of the allegations that plaintiff has made.

Once the defendant employer has offered "legitimate, nondiscriminatory reasons" for its actions, the burden then shifts back to the plaintiff to prove that the reasons offered by the

defendant were pretextual. *See* St. Mary's Honor Center v. Hicks, 509 U.S. at 506-08, 113 S. Ct at 2746-48; McDonnell Douglas, 411 U.S. at 804, 93 S. Ct. at 1825; Holt v. KMI-Continental, 95 F.3d 123 (2nd Cir. 1996). The ultimate burden of persuasion remains at all times with the employee; *see* Burdine, 450 U.S. at 253, 101 S.Ct. at 1093; who must still prove intentional discrimination. *See* St. Mary's Honor Center v. Hicks, 509 U.S. at 515, 113 S. Ct. at 2751; Holt, 95 F.3d at 129, *citing* Gallo v. Prudential Residential Services, Ltd., 22 F.3d 1219, 1224 (2nd Cir. 1994); Hollander v. American Cynamid Co., 172 F.3d 192 (2d Cir. 1999). Once the defendant has offered a legitimate, nondiscriminatory reason for its actions, the plaintiff, in order to survive a motion for summary judgment, "must put forth adequate evidence to support a rational finding that the legitimate nondiscriminatory reasons proffered by the employer were false, and that more likely than not the employee's … race was the real reason for the discharge." Holt, 95 F.3d at 129, *citing* Viola v. Philips Medical Systems of North America, 42 F3d 712, 717 (2nd Cir. 1994). Even proof of pretext does not automatically require a finding of discrimination, nor does it shift the burden to the defendant to prove that the true motivation was not discriminatory. St. Mary's Honor Center v. Hicks, *supra*; Hollander v. American Cynamid Co., 172 F.3d 192 (2nd Cir. 1999).

Once the defendant employer has met the burden of producing a legitimate non-discriminatory reason for the employment decision, the McDonnell-Douglas framework presumptions and burdens disappear. Weinstock v. Columbia University, 224 F.3d 33, 42 (2nd

Cir. 2000). The sole remaining issue becomes whether discrimination took place. St. Mary's Honor Center, 509 U.S. at 511, 113 S.Ct. at 2749. The ultimate burden of persuading the trier fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. Reeves v. Sanderson Plumbing, 530 U.S. 133, 143, 120 S.Ct. 2097, 2106 (2000). A rejection of the employer's legitimate, non-discriminatory reason for its action does not compel judgment for the plaintiff. St. Mary's Honor Center, 509 U.S. at 511, 113 S.Ct. at 2749. It is not enough to disbelieve the employer; the fact-finder must believe the plaintiff's explanation of intentional discrimination. Id.; Weinstock v. Columbia University, 224 F.3d at 42.

It is not the function of the courts to second-guess a hiring decision made by employers. *See* Simms v. Oklahoma, 165 F.3d 1321, 1330 (10th Cir.1999) (holding that the courts, when analyzing the pretext issue, do not sit as "super-personnel departments," free to second-guess the business judgments of an employer), *cert. denied*, 528 U.S. 815, 120 S.Ct. 53 (1999). In addition, "Title VII is not violated by the exercise of erroneous or even illogical business judgment." Sanchez v. Philip Morris, Inc., 992 F.2d 244, 247 (10th Cir. 1993), *citing* Pollard v. Rea Magnet Wire Co., Inc., 824 F.2d 557, 559 (7th Cir.1987). The court should especially not be in the position of second guessing hiring decisions that are based on legitimate, nondiscriminatory rationales. *See* Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998), *citing* Holmes v. Bevilacqua, 794 F.2d 142, 146-47 (4th Cir. 1986) (en banc). It is clear that the

defendant has articulated legitimate, non-discriminatory reasons for its employment actions vis-à-vis the plaintiff. *See* Texas Department of Community Affairs v. Burdine, *supra*. In this context, "the McDonnell Douglas framework--with its presumptions and burdens--is no longer relevant." St. Mary's Honor Center v. Hicks, 509 U.S. at 510, 113 S.Ct. at 2749 (internal quotations omitted). "The defendant's 'production' ... having been made, the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven 'that the defendant intentionally discriminated against [him].'" St. Mary's, 509 U.S. at 510-11, 113 S.Ct. at 2749, *quoting* Burdine, 450 U.S. at 253, 101 S.Ct. 1089. Here, the plaintiff provides no reason to disturb the defendant's business judgment. *Cf.* Fischbach v. District of Columbia Department of Corrections, 86 F.3d 1180, 1183 (D.C.Cir.1996) (only when the employer makes "an error too obvious to be unintentional" should the court consider whether it had an unlawful motive for doing so, and cautioning against the use of 20/20 hindsight).

Neither the plaintiff's membership in a protected class, nor her suspicions of discriminatory motive, can sustain her burden of proof in the face of defendant's credible evidence of a nondiscriminatory reason for its (and its agents) actions. *See* Nagel v. Avon Board of Education, 575 F.Supp. 105, 111 (D.Conn. 1983). Simply put, the plaintiff has provided insufficient evidence from which any inference of discrimination can be made. Accordingly, judgment should enter for defendant Norwalk Board of Education on Counts One and Three.

**C. JUDGMENT SHOULD ENTER FOR THE DEFENDANTS ON THE PLAINTIFF'S CLAIMS OF VIOLATIONS OF THE EQUAL PROTECTION CLAUSE IN COUNT TWO BECAUSE OF THE LEGITIMATE AND RATIONAL/NON-DISCRIMINATORY REASONS FOR THEIR ACTIONS AND LEGALLY INSUFFICIENCY.**

In order to state a claim for violation of her right to equal protection under the law, the plaintiff must allege that: (1) she, compared with others similarly situated persons, was selectively treated; and (2) such selective treatment was based on impermissible considerations such as race, religion, gender, age, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. Crowley v. Courville, 76 F.3d 47, 52-3 (2nd Cir. 1996). Both of these elements are necessary to state a claim, and "a demonstration of different treatment from persons similarly situated, without more, would not establish malice or bad faith." Crowley v. Courville, 76 F.3d at 53.

**1. Selective treatment/bad faith intent to injure.**

The plaintiff has alleged that the defendants treated her differently than other monitors/guards in violation of the Equal Protection Clause. The plaintiff's claim of different treatment is not based upon an allegation that she is a member of a protected class or that the alleged disparate treatment tramples upon a fundamental right;[2] accordingly, the plaintiff's equal

[2]To the extent the plaintiff alleges that any disparate treatment emanates from her race and gender, the legitimate non-discriminatory reasons defeats such a claim. *See* Section IV.B, *supra*.

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

protection claim must be reviewed under the rational relationship test. *See, e.g.*, Mazurek v. Wolcott Board of Education, 815 F. Supp. 71, 77 (D. Conn. 1993); Kelley v. Johnson, 425 U.S. 238, 247-48, 96 S.Ct. 1440, 1446 (1976). The Second Circuit had previously extended the protections of the Equal Protection Clause to similarly situated individuals who are "selectively treated" differently due to a "malicious or bad faith intent to injure." *See, e.g.*, LeClair v. Saunders, 627 F.2d 606, 611 (2nd Cir. 1980). The U.S. Supreme Court recognized such claims under the Equal Protection Clause in Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073 (2000). However, such an inquiry into an equal protection claim of "malicious or bad faith intent to injure" does not merit strict scrutiny but rather mere rational basis scrutiny. Id. at 564, 120 S.Ct. at 1074; LeClair v. Saunders, 627 F.2d at 611. Thus, this court need only determine whether defendants' actions present a rational means of advancing a legitimate governmental interest. Williamson v. Lee Optical of Oklahoma, 348 U. S. 483, 488-9, 75 S.Ct. 461, 464-5 (1955). A decision is irrational only if the public entity acts with "no legitimate reason for its decision." Crowley v. Courville, 76 F.3d 47, 52 (2nd Cir. 1996).

In addition, in order to establish that she was subject to selective treatment, a plaintiff must plead that she was similarly situated to other persons but was nevertheless treated differently. *See, e.g.,* Crowley v. Courville, *supra*; Gagliardi v. Village of Pawling, 18 F.3d 188, 193 (2nd Cir. 1994). To be "similarly situated," the individuals with whom the plaintiff attempts to compare herself must be similarly situated in all material respects. Shumway v. United Parcel

Service, Inc., 118 F.3d 60, 64 (2nd Cir. 1997). While the court in Shumway sets forth in detail the definition of "similarly situated" in the context of the plaintiff's burden of establishing a *prima facie* case for a sex discrimination under Title VII, the standard for being "similarly situated" set forth in Shumway is also appropriate for application by analogy to equal protection cases such as the instant matter. *See, e.g.,* LaTrieste Restaurant v. Village of Port Chester, 188 F.3d 65, 69 (2nd Cir. 1999) (applying the "similarly situated" analysis in Shumway to equal protection claim); Hart v. Westchester Cty. Dept. of Social Servs., 160 F. Supp. 2d 570, 578 (S.D.N.Y. 2001) (same).

Under the Equal Protection Clause, the plaintiff at all times must establish the occurrence of intentional discrimination, i.e., a specific intent to retaliate against the plaintiff in order to injure her. Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 99 S.Ct. 2282 (1979) (action must be taken *because of* intent to adversely affect group); Washington v. Davis, 426 U.S. 229, 96 S.Ct. 426 (1976). Merely negligent conduct or errant or mistaken judgment does not support a denial of equal protection. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265, 97 S.Ct. 555, 563 (1977); Beck v. Washington, 369 U.S. 541-554-5, 82 S.Ct. 955, 962-3 (1962). Mere disparate impact or unequal results does not suffice for proving an equal protection claim. Washington v. Davis, *supra*; Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161 (1970).

It is respectfully submitted that the plaintiff's equal protection/selective treatment/ "malicious intent to injure" claims fall far short. As has been discussed previously, *see* Sections IV.B, *supra*, the plaintiff has not been treated any differently with regard to the term and conditions of her employment. Notwithstanding the plaintiff's conclusory allegations, the plaintiff has been subject to the same standards of treatment as all other monitors and guards, especially those who were of a probationary nature. ***See Affidavit of Dooley***. Moreover, clear rational (and legitimate non-discriminatory) bases exist for the defendants' treatment of the plaintiff. For example, while reasonable minds may differ, the evaluation process and decision to non-renew the plaintiff's employment as a probationary employee cannot be viewed as irrational. It cannot be said that the defendants' actions were irrational, i.e., performed with "no legitimate reason for its decision." Crowley v. Courville, 76 F.3d at 52. The defendants' demands are further justified by the special mission of the schools. *Cf.* Conley v. Board of Education of the City of New Britain, 143 Conn. 488, 497, 123 A.2d 747 (1956) (school system acts "in loco parentis").

The plaintiff must demonstrate that defendants maliciously singled out the plaintiff via their treatment of her with the intent to injure him. Crowley v. Courville, 76 F.3d at 53. She fails in this effort. A demonstration of different treatment from persons similarly situated, without more, would not establish malice or bad faith. Id. *See also* Zahra v. Town of Southold, 48 F.3d 674, 679-80 (2nd Cir.1995) ("The evidence suggesting that [plaintiff] was 'treated

differently' from others does not, in itself, show malice.") As stated previously, the plaintiff does not come even close to establishing any basis of an impermissible or malicious motive on the part of the defendants. The plaintiff herself stated that she never had any problems or arguments with any of the named defendants or anyone else at Briggs. She recalls being told by Principal Zamcheck at the June 16, 2000 meeting that she was "a very nice lady," but perhaps "too nice" to be an effective monitor. ***Deposition of Plaintiff, Attachment A, pp. 85-86***. Those are hardly the words of a person who has a malicious intent. Those are words consistent with the legitimate/non-discriminatory/rational bases for the defendants' actions, which actions were based upon the evaluation of the plaintiff's performance.

In determining whether defendants' actions pass muster under the rational basis test, this court should be mindful that "not every difference in treatment of public employees rises to the level of a constitutional deprivation either under equal protection or due process." Daniels v. Quinn, 801 F.2d 687, 691 (4th Cir. 1986). While a citizen does not surrender his constitutional rights upon becoming a public employee, the U.S. Supreme Court nevertheless has cautioned that "government offices could not function if every employment decision became a constitutional matter." Connick v. Myers, 461 U.S. 138, 143, 103 S.Ct. 1684, 1688 (1983). Usually, "absent such impermissible sex or racial discrimination or First Amendment restraints - clear violations of positive express constitutional or statutory mandate - the federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made

daily by public agencies." Id. (internal citation omitted). *See also* Vukadinovich v. Board of School Trustees of Michigan City Schools, 978 F.2d 403, 414 (7th Cir. 1992) ("the Equal Protection Clause does not require that federal courts review the circumstances surrounding every personnel decision of public school boards.") As such, the courts have clearly held that they will not serve to second-guess the judgments of government employers with regard to, i.e., the terms and conditions of employment. *See, e.g.*, O'Quinn v. Chambers County, Texas, 636 F.Supp. 1388, 1393-94 (S.D.Tex. 1986). "Section 1983 protects only *constitutional* rights. It is not simply a means for federal review of allegedly arbitrary and capricious state action." Cornett v. Sheldon, 894 F.Supp. 715, 723 (S.D.N.Y. 1995) (*citing* Alfaro Motors, Inc., v. Ward, 814 F.2d 883, 888 (2nd Cir. 1987)); Heller v. Doe by Doe, 509 U.S. 312, 319, 113 S.Ct. 2637, 2642 (1993). A governmental decision should be upheld if there is "any reasonably conceivable state of facts that could provide a rational basis" for the different treatment. Id.

In addition, mere selective prosecution or punishment by a public agency does not constitute an actionable offense under the Equal Protection Clause. *See, e.g.*, Falls v. Town of Dyer, 875 F.2d 146 (7th Cir. 1989). *See also* Wayte v. United States, 470 U.S. 598, 105 S.Ct. 1524 (1985). An allegation or demonstration of different treatment for persons similarly situated, without more, is insufficient to establish the requisite malice or bad faith intent to injure. *See* Crowley v. Courville, 76 F.3d 47, 52 (2nd Cir. 1996). Even a gross disparity in employment terms and conditions does not violate the Equal Protection Clause absent clear proof

that such classification was based upon malicious intent - grounds which may implicate the Constitution. O'Quinn v. Chambers County, Texas, *supra*; *cf.* Wayte v. U.S., 470 U.S. at 608, 105 S.Ct. at 1531; Russell v. Collins, 998 F.2d 1287, 1294 (5th Cir. 1993) (prosecutor has discretion to enter into plea agreements with some but not with others.); Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 43 (3rd Cir. 1984); U.S. v. Cook, 949 F.2d 289, 292 (10th Cir. 1991).

Moreover, when viewing the plaintiff's equal protection claims, courts must also be mindful that a mere allegation of discriminatory intent does not substantiate a claim of purposeful discrimination. *See* Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397 (1944). In Snowden, the plaintiff alleged that state officials acted maliciously and misapplied state law in failing to certify him as a candidate for state office. Upon reviewing the plaintiff's complaint, the U.S. Supreme Court stated:

> The lack of any allegations in the complaint here, tending to show a purposeful discrimination between persons or classes of persons is not supplied by the opprobrious epithets "willful" and "malicious" applied to the Board's failure to certify petitioner as a successful candidate, or by characterizing that failure as an unequal, unjust, and oppressive administration of the laws of Illinois. These epithets disclose nothing as to the purpose and consequence of the failure to certify, other than that petitioner has been deprived of the nomination and election, and therefore add nothing to the bare fact of an intentional deprivation of petitioner's right to be certified to a nomination to which no other has been certified.

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

Snowden v. Hughes, 321 U.S. at 10, 64 S.Ct. at 402. Thus, the Court held that the plaintiff's allegations were insufficient to raise an equal protection claim. Consistent with Snowden, the courts have ruled that vague and conclusory allegations in civil rights actions that official conduct is "malicious" or "discriminatory" are disfavored. *See, e.g.,* Barr v. Abrams, 810 F.2d 358, 363 (2nd Cir. 1987); Leclair v. Saunders, 627 F.2d at 609-610. Indeed, courts have held that claims brought under 42 U.S.C. §1983 require specific allegations at the pleading stage. *See, e.g.*, Sanders v. City of New York, 692 F. Supp. 308, 311 (S.D. N.Y. 1988).[3] The Second Circuit of the U.S. Court of Appeals has offered:

> As we have repeatedly held, complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.

Barr v. Abrams, 810 F.2d at 363.

In the instant case, the plaintiff's equal protection claim appears to be based merely upon conclusory allegations and assertions that the defendants maliciously and intentionally treated

[3]In Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 113 S.Ct. 1160 (1993), the U. S. Supreme Court held that the federal courts may not apply a heightened pleading standard in civil rights cases alleging municipal liability under 42 U.S.C. §1983. In doing so, however, the Court expressly stated that "we . . . have no occasion to consider whether our qualified immunity jurisprudence would require a heightened pleading standard in cases involving individual government officials." Id. at 166-7. In declining to extend its holding to suits against individual officers, the Court emphasized that, "unlike various government officials, municipalities do not enjoy immunity from suit -- either absolute or qualified -- under §1983." Id. at 166-7. Due to the existence of claims against individual governmental officials (i.e., Follman, Dooley, Labosco, and Zamcheck), it is respectfully submitted that the heightened pleading requirement for §1983 claims is still applicable.

her differently. The plaintiff does not allege how she was "similarly situated." As stated previously, the courts have been especially wary of second guessing an employers' discretion in managerial decisions. Accordingly, the actions of government officials are bequeathed with a presumption of constitutionality, subject to limited scrutiny; accordingly, the courts are loath to intrude and second guess such judgments. *See* Felton v. Fayette School District, 875 F.2d 191, 193 (8th Cir. 1989). *See also* Board of Education v. McCluskey, 458 U.S. 966; 102 S. Ct. 3469 (1982); Wood v. Strickland, 420 U.S. 308; 95 S. Ct. 992 (1975). While the plaintiff admittedly is correct in her assertion that those similarly situated must be treated "equally," the Constitution does not require that they be treated identically. Zeigler v. Jackson, 638 F.2d 776 (5th Cir. 1981); *see also* Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566 (1976). Other than some attention-getting language and crafty phrasing, nowhere does the plaintiff establish a legally sufficient nexus between the defendants' conduct and these prototypical, form allegations of malicious intent. Slapping a tag of "malice" into a pleading should not grant the plaintiff an opportunity to proceed with her claim as a matter of law. Snowden v. Hughes, 321 U.S. at 10, 64 S.Ct. at 402; Barr v. Abrams, 810 F.2d at 363. The plaintiff's conclusory claims are insufficient to establish an Equal Protection Clause claim.

In the instant case, the plaintiff merely alleges in a conclusory manner that she was deprived of equal protection of the laws. The plaintiff does not allege how she was "similarly situated," or treated differently than other similarly situated individuals. Accordingly, the

plaintiff's conclusory equal protection claim is without merit. The plaintiff was subject to the well established evaluation process. Based upon this evaluation process, and his considered judgment, defendant Zamcheck then recommended to LaBosco that the plaintiff's employment be non-renewed. While the plaintiff may disagree with the outcome of the process, and may view herself as deserving of the position in question, there simply is no reason to second guess the defendants' undertaking of this important governmental function, i.e., evaluating and employing school personnel, especially in the absence of any proof of a malicious motive. As stated above, the plaintiff herself is unable to provide any support for a claim of any illegal or improper motive for the plaintiff's non-renewal. ***Deposition of Plaintiff, Attachment A, pp. 28-30.*** Indeed, the plaintiff cannot cite to any proof of any ill will toward her that motivated the decision by those who hired the plaintiff to non-renew her employment, and to not hire her position at the Norwalk High School, and the alleged disparate treatment. ***Id.***

### 2. Race and gender discrimination claims

The plaintiff's interstitial claims of race and gender discrimination under the Equal Protection Clause are insufficient. Since the analysis of discrimination under Title VII is also appropriate for application to equal protection cases; LaTrieste Restaurant v. Village of Port Chester, *supra* (applying "similarly situated" analysis in Shumway to equal protection claim), and since the legitimate non-discriminatory reasons for the defendants' actions also serve to

advance the employer's interests, the plaintiff's race and gender discrimination claims also fail under the Equal Protection Clause. *See* Sections IV.A and B, *supra.*

### D. DEFENDANTS LaBOSCO, ZAMCHECK, DOOLEY AND FOLLMAN HAVE A QUALIFIED IMMUNITY TO ANY CLAIM FOR MONEY DAMAGES CONTAINED IN COUNT TWO.

The plaintiff seeks compensatory and punitive damages against the defendants.[4] Defendants LaBosco, Zamcheck, Dooley and Follman are entitled to a qualified immunity to the plaintiff's claim for damages under 42 U.S.C. §1983 in Count Two against them in their individual capacities. *See, e.g.,* Harlow v. Fitzgerald, 457 U.S. 800, 818-9, 102 S. Ct. 2727, 2738-9 (1982).

Public officials performing discretionary functions are protected by a qualified, good faith immunity from liability for damages under 42 U.S.C. §1983; thus, such officials are entitled to such immunity in their individual capacities "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. at 818, 102 S. Ct. at 2738. *See also* Natale v. Town of Ridgefield, 927 F.2d 101, 104-05 (2nd Cir. 1991). In determining whether such a qualified immunity exists, the court should focus upon the "objective reasonableness of an official's conduct, as measured by reference to clearly established law." Harlow v. Fitzgerald,

[4] The plaintiff cannot maintain a claim for punitive damages against the Norwalk Board of Education. *See* City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S. Ct. 2748 (1981).

457 U.S. at 818, 102 S. Ct. at 2738. The court should focus on "not only the currently applicable law, but whether the law was clearly established at the time an action occurred." Id. What "clearly established" means depends largely "upon the level of generality at which the relevant 'legal rule' is to be established." Anderson v. Creighton, 483 U.S. 635, 639, 107 S. Ct. 3034, 3038-9 (1987). "Clearly established" for purposes of qualified immunity means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id., at 640, 107 S.Ct. at 3039 (internal citations omitted). The right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established. *See* Wilson v. Layne, 526 U.S. 603, 615, 119 S. Ct. 1692, 1699-1670 (1999).

It is respectfully the plaintiff's complaint is legally and factually insufficient and should be dismissed. Indeed, it is difficult to separate a discussion of the merits of the plaintiff's claims of violation of her assorted constitutional rights from this discussion of the existence of a qualified immunity. Nevertheless, regardless of the merits of the plaintiff's claims of deprivations of constitutional rights, the plaintiff cannot establish that the individual defendants violated "clearly established constitutional rights" in light of the law as established at the time of the actions taken. Harlow v. Fitzgerald, *supra*; Mazurek v. Wolcott Board of Education, 815 F.

Supp. 71, 77 (D.Conn. 1993). There is no way that any of the defendants could have thought any role they played in evaluating the plaintiff's performance and recommending non-renewal of her employment due to performance related concerns, and not hiring for another position, would violate the plaintiff's Fourteenth Amendment rights. In addition, defendants Dooley and Follman were not involved in the evaluation process, or in the alleged "disparate treatment" and decision to non-renew the plaintiff's employment with respect to the Briggs School position. Their only role in the alleged discriminatory actions was in causing the hiring of another African American female (albeit more qualified) for the Norwalk High School position. Defendants LaBosco also had no role in the day to day operations of the Briggs School. Finally, defendants LaBosco and Zamcheck have no role in the decision not to hire the plaintiff for the Norwalk High School position. Under an "objective reasonableness" standard, the defendants would not know or suspect that their actions could violate plaintiff's "clearly established" constitutional rights; accordingly, defendants Follman, LaBosco, Dooley and Zamcheck are entitled to qualified immunity to liability.

### E. DEFENDANT NORWALK BOARD OF EDUCATION IS IMMUNE FROM LIABILITY FOR SOME IF NOT ALL OF THE ALLEGATIONS DUE TO THE LACK OF AN OFFICIAL POLICY OR CUSTOM.

A municipality may be deemed liable pursuant to 42 U.S.C. §1983 for a violation of Constitutional rights if the municipality causes the violation. It may not be held responsible under a theory of *respondeat superior* or vicarious responsibility for every action of its

employees. For a municipality to be found liable, the act must have been pursuant to the municipality's policy or custom. Monell v. Department of Social Services, 436 U.S. 658, 691-694, 98 S.Ct. 2018, 2036-2037(1978). The act must also have been performed by a body or official with "final policy-making authority." Jett v. Dallas Independent School District, 491 U.S. 701, 736-37, 109 S.Ct. 2702, 2723-24 (1989), *citing* City of St. Louis v. Praprotnik, 485 U.S. 112, 123-124, 108 S.Ct. 915, 924 (1988). Random acts or isolated incidents by employees are generally not sufficient to establish custom or official policy unless approval can be inferred through supervisory failure to act that amounts to deliberate indifference or "gross negligence." Turpin v. Mailet, 619 F.2d 196, 200-202 (2d Cir.1980), *cert. denied, sub nom.* Turpin v. City of West Haven, 449 U.S. 1016, 101 S.Ct. 577 (1980). Whether the official who allegedly caused the deprivation of rights possessed "final policy-making authority" is a question of law that must be resolved according to state law. The court must look to state and local positive law as well as " 'custom or usage' having the force of law." Once the court has identified those bodies or officials who have final policy-making authority with regard to the action, it becomes a question of fact as to whether those bodies or officials caused the violation either by affirmative policies or by "longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." Jett, 491 U.S. at 737, 109 S.Ct. at 2724, *quoting* Pembaur v. Cincinnati, 475 U.S. 469, 485-87, 106 S.Ct. 1292, 1301-02 (1986). *See also* Sekor v. Capwell, 889 F.Supp. 34, 38-9 (D.Conn. 1995).

In the instant case, some if not all of the alleged actions were by persons without final policy-making authority with respect to the alleged violation of plaintiff's constitutional rights. *See* Section IV.D, *supra*. Any alleged role by the individual defendants in the various alleged "disparate treatment" in the plaintiff's conditions of employment would likewise not be pursuant to a custom or policy. Instead of meeting their burden under Monell for establishing municipal liability under 42 U.S.C. §1983, the plaintiff rely upon conclusory allegations. However, such allegations were insufficient to support municipal liability of the District, since "general, indirect and conclusory allegations" are not sufficient to support a claim of a deprivation of constitutional rights. Hankard v. Town of Avon, 126 F.3d 418, 423 (2nd Cir. 1997). *See also* Avery v. City of West Haven, 2001 U.S. Dist. LEXIS 24394 (D.Conn. 2001), *affirmed*, 2002 WL 807928 (2nd Cir.2002); Buckley v. City of West Haven, 3:93CV02322 (DJS), slip opinion, pp. 7-9 (D.Conn. 1999). As such, the plaintiff has not presented to this court a basis for holding the Board liable for the alleged actions.

## V. CONCLUSION

For the foregoing reasons, this court should grant the defendants' Motion for Summary Judgment.

DEFENDANTS–NORWALK BOARD OF EDUCATION, ET AL

By______________________________

Mark J. Sommaruga (ct09865)
Susan L. Gundersen (ct25246)
Sullivan, Schoen, Campane & Connon, LLC
646 Prospect Avenue
Hartford, CT 06105
Tel: (860)-233-2141
Fax: (860)-233-0516
email: msommaruga@sscc-law.com
email: sgundersen@sscc-law.com

# CERTIFICATION

This is to certify that a copy of the foregoing was mailed via U. S. Mail, postage prepaid, to Cynthia R. Jennings, Esq., The Barrister Law Group, LLC, 211 State Street, Bridgeport, CT 06604, this ~~13th~~ 17th day of February, 2004.

Mark J. Sommaruga

- 39 -

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326