UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JULIA JACKSON,<br>      Plaintiff | CIVIL ACTION NO.<br>3:02CV1777(AHN) |
| v. | |
| NORWALK BOARD OF EDUCATION,<br>LOUIS LaBOSCO, DR. NORMAN<br>ZAMCHECK, ART DOOLEY, and<br>RICK FOLLMAN<br>      Defendants | FEBRUARY 13, 2004 |

## DEFENDANTS' LOCAL RULE 56(a)1 STATEMENT

1.  The plaintiff, Julia Jackson, was hired as a security monitor by defendant Norwalk Board of Education ("the Board") at Briggs High School on or about March 6, 2000. [Plaintiff's Second Amended Complaint, ¶ 6; Defendants' Answer to Amended Complaint, ¶ 6.]

2.  Briggs High School is Norwalk's "alternative" high school. The students at Briggs were there because they could not function in the regular high school environment. Many of the students had disciplinary problems or were involved in the juvenile court system. Unlike the other high schools in Norwalk, Briggs had fewer students and a shortened day that ended at

12:45 p.m. [Attachment A (Deposition of Plaintiff), page 86; Affidavit of Norman Zamcheck, ¶¶ 3, 4, 4a; Affidavit of Art Dooley, ¶ 13]

3.  The job posting for the Briggs High School monitor position notified all applicants that the position required 27.5 hours per week and that there would be no benefits provided. [Attachment B (Position Announcement); Affidavit of Art Dooley, ¶ 13]

4.  The decision to hire plaintiff was made by Principal Norman Zamcheck and Louis LaBosco after a committee including Principal Zamcheck interviewed the plaintiff and other candidates. Principal Zamcheck strongly recommended that she be hired for the position. [Affidavit of Norman Zamcheck, ¶ 5; Attachment C (Defendants' Response to Interrogatories), p. 3]

5.  The plaintiff's main duty as the only monitor at Briggs High School was to provide supervision both inside and outside the school to insure the safety of pupils and staff and the protection of school property. This was accomplished primarily by patrolling the hallways and school grounds and supervising the students as they passed between classes and in places where they congregated while they took their breaks. [Attachment D (AFSCME Local 1042 Contract), p. 17a; Attachment A, p. 46; Affidavit of Art Dooley, ¶ 8; Affidavit of Norman Zamcheck, ¶ 11]

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

6. As a new employee in March of 2000, the plaintiff was subject to a 90-day probationary period during which the employer may dismiss the employee without further recourse on the employee's part. Only upon successful completion of this probationary period would the plaintiff become a regular, "permanent" employee with seniority rights and other protections with respect to discipline and termination. [Plaintiff's Amended Complaint, ¶11; Defendants' Answer to the Amended Complaint, ¶ 11; Attachment D, pp. 17-18]

7. Monitors are expected to wear uniforms. On the job posting for the position that plaintiff filled, applicants were notified that detailed information regarding uniforms was available at the Human Resource Office. [Attachment B; Affidavit of Art Dooley, ¶ 10]

8. To obtain a uniform, plaintiff was expected to go to an approved vendor to be fitted for a uniform which would <u>then</u> be paid for by the Board. As a practice, the Head of Security does not consider the uniform to be mandatory until the employee successfully completed the probationary period. [Affidavit of Art Dooley, ¶ 9]

9. The use of walkie-talkies by monitors varied. Most monitors worked with walkie-talkies as provided by the school. At the time that plaintiff was hired, Briggs had no functional walkie-

- 3 -

talkies. The current monitor at Briggs does not use a walkie-talkie. [Affidavit of Art Dooley, ¶12; Affidavit of Norman Zamcheck, ¶¶ 7, 8]

10.  Lunch breaks and coffee breaks for monitors are scheduled according to the needs of supervising the students. At Briggs, because the school day ended early, everyone on staff ate lunch after the students had left. [Affidavit of Art Dooley, ¶ 14; Affidavit of Norman Zamcheck, ¶ 4]

11.  Plaintiff reported to and was supervised on a daily basis by Principal Norman Zamcheck. Zamcheck expected the plaintiff to move throughout the campus and develop a rapport with the students. Often, he observed her sitting "in a corner like a toll booth." When this occurred, he directed her to get up and move around the school. The plaintiff refused to follow his directions and refused to supervise the students by moving among them. [Affidavit of Norman Zamcheck, ¶¶ 9, 10, 11, 12]

12.  Plaintiff was also supervised by Art Dooley, the Head of Security. Dooley would occasionally visit to see how things were going. He made at least three or four of these visits during the time that she worked there. He recalls that the plaintiff told him that she "did not know if she was cut out for this job." She did not think that she could handle the students at

- 4 -

Briggs. Dooley observed that she appeared to be fearful of the students when she interacted with them. Because she appeared timid, the students did not listen to her. [Affidavit of Art Dooley, ¶ 16]

13.     The plaintiff's performance during her probationary period was evaluated by Principal Zamcheck on June 6, 2000. On that date, the plaintiff met with Zamcheck to discuss her evaluation. She was shown a copy of the written evaluation, which she read and signed. [Affidavit of Norman Zamcheck, ¶ 15; Attachment A, pp. 32-33; Attachment E (Employee Evaluation)]

14.     In his evaluation of the plaintiff, Zamcheck noted that the plaintiff had not sufficiently covered the areas between buildings or controlled the students during break times. In addition, he noted that on several occasions, the plaintiff became overly excited and stressed with the students and was unable to establish control and/or direction over a number of students. The plaintiff received unsatisfactory markings in the categories of "recognizes others' priorities" and being "proactive." The recommendation of the June 6, 2000 evaluation was that plaintiff not be rehired for the 2000-2001 school year. [Attachment E; Affidavit of Norman Zamcheck, ¶¶12-14]

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

15. Following the plaintiff's evaluation at the end of her probationary period, the decision was made to not re-hire the plaintiff for the 2000 – 2001 school year due to poor performance. [Attachment A p. 32; Attachment E; Attachment F ( Letter of Non-renewal)]

16. By letter dated June 6, 2000 from the Board's Director of Human Resources, defendant Louis LaBosco, the plaintiff was advised that her probationary period had expired and that her employment would not be renewed for the 2000-2001 school year. [Attachment A, pp. 31-32; Attachement F]

17. The decision not to re-hire the plaintiff was made by Director Louis LaBosco and Principal Norman Zamcheck, -- the very same people who made the initial decision to hire the plaintiff three months earlier. [Attachment C, p. 3; Affidavit of Zamcheck ¶ 14]

18. The plaintiff remained in this position for the rest of the school year, until June 16, 2000. [Plaintiff's Amended Complaint, ¶ 15; Defendants' Answer to Plaintiff's Amended Complaint, ¶ 15]

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

19. Since the plaintiff did not successfully complete her probationary period of employment, she was not entitled to further recourse or benefits under the Local 1042 contract. [Attachment A, pp. 31-32; Attachment D, pp. 17-18; Attachment F]

20. On June 16, 2000, at the plaintiff's request, Principal Zamcheck met with the plaintiff and Local 1042 President John Mosby to discuss the evaluation of June 6, 2000. [Affidavit of Norman Zamcheck, ¶ 17]

21. During the meeting on June 16, 2000, plaintiff was told by Principal Zamcheck that "[she] was too nice of a person. He just didn't think [she] would fit the bill for the security guard. [She] wasn't – in other words, [she] wasn't tough enough." [Attachment A, p 86]

22. According to the plaintiff, Zamcheck also stated at the June 16, 2000 meeting that "Miss Jackson is a very nice lady and all that, but I just don't think she would be good for security here." [Attachment A, p. 85]

23. At the June 16, 2000 meeting, Zamcheck changed his evaluation of plaintiff to reflect satisfactory marks because Zamcheck wanted to protect the school department and prevent threatened litigation. Regardless of the second evaluation, Zamcheck's opinion that the plaintiff

- 7 -

performed her job poorly never changed. Furthermore, the decision to not renew plaintiff's position was never changed. [Affidavit of Zamcheck, ¶¶ 16, 17, 18, 19]

24. During the time that she worked at Briggs, the plaintiff had daily contact with Principal Zamcheck. By her own account, she had no arguments with him and she had no problems with him. [Attachment A, p. 28]

25. The plaintiff had no arguments or problems with Art Dooley, Louis LaBosco or Rick Follman or any of the teachers at Briggs High School. [Attachment A, pp. 29-30]

26. The plaintiff never requested to be hired for summer employment. In any event, following the non-renewal of her employment, she was not entitled to be given preference in summer hiring. [Affidavit of Art Dooley, ¶ 15]

27. On July 27, 2000, the plaintiff applied for a job opening for a security monitor position at Norwalk High School, a position similar to the one she had held at Briggs High School. [Attachment G (Plaintiff's Letter of Application)]

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

28.  Art Dooley, Head of Security and also a person of African-American heritage, and Richard Follman, Housemaster of Norwalk High School interviewed plaintiff in early August. [Affidavit of Art Dooley, ¶ 17; Attachment H (Interview Sheet/Recommendation for Hiring)]

29.  Other interviewees included Tia Perry, an African-American female, Deon Hardison, an African-American male, and James Dupre, another African-American male. [Attachment H]

30.  It is not the policy of the Norwalk Public Schools to give former employees first consideration for job openings. There is, however, a practice of giving consideration to current employees or employees who have been laid off. In July of 2000, Julia Jackson was considered a former employee. [Affidavit of Art Dooley, ¶ 18]

31.  As a member of the Local 1042 AFSCME union, the plaintiff brought a grievance claiming that she was unjustly denied the Norwalk High School security monitor position. The arbitration award concluded that plaintiff had no status that would entitle her to be given first consideration. [Attachment I (Arbitration Award), p. 2]

32.  After conducting all of these interviews, Dooley and Follman selected Tia Perry, an African-American female, for the position because she had a background and understanding in

security and showed an ability to handle all types of teenagers. [Attachment H; Affidavit of Art Dooley, ¶¶ 19, 20, 21]

33.    The plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities on September 13, 2000. The case was dismissed pursuant to the Merit Assessment Review process on February 6, 2001 because the Commission determined that there was no reasonable possibility that further investigation would result in a finding of reasonable cause that plaintiff had suffered employment discrimination on the basis of race or gender. [Attachment A, pp. 63-64; Attachment J (Commision on Human Rights Decision)]

34    The Norwalk Board of Education has employed a significant number of minorities to work as monitors and security guards both historically and to the present date. [Attachment C, pp. 9, 10]

35.    The defendants took the deposition of plaintiff Julia Jackson on November 14, 2003 during which numerous exhibits were marked, shown and/or authenticated by the plaintiff. [Attachment A; Attachment B; Attachments E through J]

- 10 -

DEFENDANTS–NORWALK BOARD OF EDUCATION, ET AL

By *[signature]*
Susan L. Gundersen (ct25246)
Mark J. Sommaruga (ct09865)
Sullivan, Schoen, Campane & Connon, LLC
646 Prospect Avenue
Hartford, CT 06105
Tel: (860)-233-2141
Fax: (860)-233-0516
Email: sgundersen@sscc-law.com
Email: msommaruga@sscc-law.com

- 11 -

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed via U. S. Mail, postage prepaid, to Cynthia R. Jennings, Esq., The Barrister Law Group, LLC, 211 State Street, Bridgeport, CT 06604, this _17th_ day of February, 2004.

_____
Susan L. Gundersen

LAW OFFICES • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326