FILED

2004 APR 29 P 4:48

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JULIA JACKSON : | |
| Plaintiff : | |
| : | |
| V. : | CIVIL NO. 3:02CV1777(AHN) |
| : | |
| NORWALK BOARD OF : | |
| EDUCATION et al : | |
| Defendant : | APRIL 29, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

The plaintiff brought a five count complaint alleging discrimination in employment. Specifically the plaintiff alleged that the defendants violated Title VII, the Connecticut Fair Employment Practices Act, and the Equal Protection Clause of the United States Constitution. Additionally, the plaintiff alleges state law claims for intentional and negligent infliction of emotional distress. The plaintiff was employed as a security monitor by the Board defendant for a short period of time before being terminated.

**II. FACTS**

The plaintiff was employed from March 6, 2000 to June 16, 2000 as a Security Monitor at Briggs High School in Norwalk, CT. The job description of the plaintiff's position required her to work twenty-seven and a half (27) hours per week. The plaintiff

received positive evaluations and had no reason to believe her employment was at risk. The plaintiff became a full time employee after June 6, 2000, and was let go June 16, 2000 for reasons unrelated to her work performance. In the past, similarly situated white and male employees were afforded a meeting and notified by letter of that meeting prior to being terminated. The plaintiff was not afforded the same opportunity as those similarly situated employees, yet she was terminated. Despite the fact that the plaintiff received satisfactory performance evaluations, her employment with the defendant, Norwalk Board of Education, was terminated by defendants, Norwalk Board of Education, Louis LaBosco and Norman Zamcheck.

In the past, full time employees who had previously been employed by defendant, Board of Education, were given first consideration for job openings over new hires.

22. On or about July 27, 2000, the plaintiff applied for another employment position for a Guard/Monitor at Norwalk High School. The plaintiff had been employed at Briggs High School just weeks prior to her application at Norwalk High School. The plaintiff's performance evaluations at Briggs High School were satisfactory. The defendants, Art Dooley and Rick Follman interviewed the plaintiff for the position. The defendants, Norwalk Board of Education, Art Dooley and Rick Follman made the decision not to rehire the plaintiff and hired an individual with less or no seniority instead. The same defendants have since terminated that individual's employment, but have still failed to contact the plaintiff to fill that position. In the past, similarly situated white and male employees were given first consideration for similar positions when they arose. In addition to the fact that the plaintiff was qualified for the position, she was not given first

consideration for the position and thus not afforded the same opportunity as other similarly situated white and male employees.

## III. ARGUMENT

### STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admission son file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moaqwalving party is entitled to a judgment as a matter of law." The Court must draw all reasonable inferences in the light most favorable to the party opposing the motion, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), mindful that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party. So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied. In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433. Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution. R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**EMPLOYMENT DISCRIMINATION**

### Plaintiff Has Made a Prima Facie Case for Hostile Work Environment

"To make out a prima facie case, the plaintiff must show that: (i) she is a member of a protected class; (ii) she was qualified for the position; (iii) the defendant took adverse action against her; and (iv) the adverse action occurred under circumstances giving rise to an inference of discrimination." Harper v. Metropolitan District Commission, 134 F. Supp. 2d 479, 483 (D. Conn. 2001) (Covello, C.J.). Stated another way, a plaintiff may make out a prima facie case "by showing that she is within a protected group; that she is qualified for the position; that she was subject to an adverse employment action...; and that a similarly situated employee not in the relevant protected group received better treatment." McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001). "Alternatively, the fourth prong of the prima facie case may be satisfied if the plaintiff can demonstrate that the...adverse employment action occurred under circumstances giving rise to an inference of discrimination on the basis of plaintiff's membership in that class." Farias v. Instructional Systems, Inc., 259 F.3d 91, 98 (2d Cir. 2001).

"To establish a prima facie case of disparate treatment, a plaintiff must show, inter alia, that she was subjected to adverse employment action, under circumstances giving rise to an inference of prohibited discrimination." Fitzgerald v. Henderson, 251 F.3d 345, 356 (2d Cir. 2001). "In an employment discrimination case, the plaintiff has the burden of 'proving by the preponderance of the evidence a prima facie case of discrimination.'" Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994), quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). A plaintiff need not necessarily prove a prima facie case to prevail, however. "For instance, if a

4

plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." Swierkiewicz v. Sorema N.A., 122 S. Ct. 992, 997 (2002).

In the case at hand, the plaintiff has satisfied all prongs of the McDonnell-Douglas test. The defendants have conceded that the plaintiff is African American, female and that she was subject to an adverse employment action. The defendants take issue with the plaintiff's differential treatment claim and the inference of discrimination. In support of this contention, the defendants rely on affidavits submitted with the pending motion and a single employee evaluation date stamped AFTER the plaintiff is alleged to have been terminated. Furthermore, a review of defendant's Attachment E and plaintiff's Exhibit J reveals that the two documents are different. The plaintiff signed the document and wrote at the bottom that she totally disagreed with the evaluation. Yet the document submitted by the defendant does not have this final statement. Obviously the original document would be helpful in resolving this credibility issue. In addition, the plaintiff received an evaluation prior to this final evaluation that was favorable. The June 6, 2000 letter the plaintiff received, does not indicate that the plaintiff was being terminated for performance issues. (Exhibit H) Instead the letter makes reference to a 90 day probationary period of which the plaintiff was never notified. (Exhibit A) The 90 day probationary period is not mentioned in the Local 1042 Contract Book for Employees. (Exhibit B) The 90 day probationary period is not listed on the job posting. (exhibit M) The 90 day probationary period is not mentioned in the employment confirmation letter to the plaintiff dated March 200. (Exhibit C)

Further, the President of Local 1042 of AFSCME John Mosby, prepared an affidavit supporting the plaintiff and indicating that other similarly situated male employees were given notice in writing of a 90 day probationary period. (exhibit N) Mr. Mosby goes on to say that other similarly situated male employees are given a hearing before being terminated even if at the end of the 90 day probationary period. (exhibit N)

The defendants' claim that the plaintiff was non-renewed for failure to perform at an adequate level is without merit. Even if such a determination is not evident through the documents, there is more than enough evidence that requires this matter not be dismissed without a factual finding. '[I]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997). Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

The defendants' legitimate non-discriminatory reason offered by the defendants is pretextual. The employer may seek to rebut the prima facie case by proof of a legitimate nondiscriminatory reason for the adverse employment action. If the plaintiff is able to persuade the jury that the employer's explanation is false, however, that fact, combined with the prima facie case, is sufficient to permit a jury to find intentional discrimination. "Proof that the defendant's explanation is unworthy of credence is...one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive....In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that

6

the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'" Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S. Ct. 2097, 108 (2000), quoting Wright v. West, 505 U.S. 277, 296 (1992). "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proferred reasons will permit...the trier of fact to infer the ultimate fact of intentional discrimination...[and] no additional proof of discrimination is required." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993). "[O]nly occasionally will a prima facie case plus pretext fall short of the burden a plaintiff carries to reach a jury on the ultimate question of discrimination...." Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 94 (2d Cir. 2001).

At the summary judgment stage, the Court should not make any finding as to whether [a defendant's] reason was, in fact, false. Rather, the Court must determine whether, after casting all of the facts of the case in the light most favorable to [the plaintiff] and drawing all inferences from those facts in favor of [the plaintiff], a rational jury could come to the conclusion that [the defendants] justification for [a particular action] is false. Peralta V. Cendant Corp 123 F.Supp.3d 65 (2000) "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

"[S]ummary judgment...is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of *motive, intent, and subjective feelings*

7

*and reactions.*" Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 111, 639 A.2d 507 (1994). "A question of intent raises an issue of material fact, which cannot be decided on a motion for summary judgment." Picataggio v. Romeo, 36 Conn. App. 791, 794, 654 A.2d 382 (1995). When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Appleton v. Board of Education, 254 Conn. 205, 757 A.2d 1059 (2000); Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991). The evidence of the party against whom summary judgment is sought must be believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court must construe the evidence in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor. Appleton, supra; Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993); Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105 (1994); D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434 (1980); Connell v. Colwell, 214 Conn. 242, 246-47 (1990).

In addition to the defendants' lack of a legitimate non discriminatory reason for terminating the plaintiff, the terms and conditions of her employment were completely different than similarly situated employees. The plaintiff was not provided a walkie

8

talkie or uniform. (exhibit N) The plaintiff was forced to eat lunch after school. Now comes the defendants claiming that the plaintiff did not adequately perform her employment duties despite that fact that they failed to provide the plaintiff with the same tools as other similarly situated employees. Further, the defendants on one hand claim, that Briggs school is a high risk school requiring special attention because of the population of students it serves. On the other hand, the defendant offers that walkie talkies are dependent on the resources of the school and Briggs school had 2 broken walkie talkies and one that had been stolen. Such an explanation for not providing the plaintiff with a walkie talkie is not consistent with the special needs requirement of the school.

**EQUAL PROTECTION**

### Plaintiff can Make a Prima Facie Case of Selective Enforcement under the Equal Protection Clause

"[W]here a plaintiff seeks to make out her prima facie case by pointing to the disparate treatment of a purportedly similarly situated employee, the plaintiff must show that she shared sufficient employment characteristics with that comparator so that they could be considered similarly situated....In Shumway v. United Parcel Service, Inc., 118 F.3d 60 (2d Cir. 1997)], the Court explained that such an employee 'must be similarly situated in all material respects' – not in all respects. 118 F.3d at 64 (emphasis added). A plaintiff is not obligated to show disparate treatment of an identically situated employee. To the contrary, Shumway holds that in those cases in which a plaintiff seeks to establish her minimal prima facie case by pointing to disparate treatment of a similarly situated employee, it is sufficient that the employee to whom the plaintiff points be

9

similarly situated in all material respects....In other words, where a plaintiff seeks to establish the minimal prima facie case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." McGuinness v. Lincoln Hall, 263 F.3d 49, 53-54 (2d Cir. 2001). The McGuinness court added in a footnote, at p. 54: "[B]ecause a Title VII plaintiff may establish a prima facie case of discrimination in a number of different ways depending on the specific facts of a given case, Shumway does not require that a plaintiff always be able to show disparate treatment of an otherwise similarly situated employee as a necessary prerequisite to a prima facie case under Title VII."

In Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073 (2000), the Supreme Court articulated the well-established law applicable to equal protection claims. "Our cases," the court held, "have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S. Ct. 190, 67 L. Ed. 340 (1923); Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336, 109 S. CT. 633, 102 L. Ed. 2d 688 (1989). In so doing, we have explained that '[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" 120 S. Ct. at 1074-75. Citing Sioux City Bridge Co., supra, at 445; Sunday Lake Iron Co. v. Township of Wakefield,

247 U.S. 340, 352 (1918). The court expressly held that it is sufficient, to state an equal protection violation, that "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 528 U.S. at 563. The motivation of the perpetrator is irrelevant. 528 U.S. at 565. Cf., Jackson v. Burke, 256 F.3d 93, 97 (2d Cir. 2000) ("proof of subjective ill will is not an essential element of a 'class of one' equal protection claim").

"Before Olech, the Second Circuit permitted selective enforcement claims based on a 'class of one' if the plaintiff could 'show both (1) that [he was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Russo v. City of Hartford, 184 F. Supp. 2d 169, 190 (D. Conn. 2002) (Hall, J.), citing Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). "In Harlen, the Court of Appeals assumed without holding that a plaintiff who establishes differential treatment could state an equal protection claim by showing 'either that there was no rational basis for the unequal treatment received, or that the [unequal treatment] was motivated by animus." Ibid., quoting Harlen, supra, at 500. Cf., Barstow v. Shea, 196 F. Supp. 2d 141, 148 (D. Conn. 2002) (Arterton, J.); Oneto v. Town of Hamden, 169 F. Supp. 2d 72, 80-81 (D. Conn. 2001) (Arterton, J.); Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001).

"The Equal Protection Clause requires that the government treat all similarly situated people alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Although the prototypical equal protection claim involves discrimination against people

based on their membership in a vulnerable class, we have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials. E.g., LeClair v. Saunders, 627 F.2d 606, 608-10 (2d Cir. 1980). The Supreme Court affirmed the validity of such 'class of one' claims 'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.' Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)." Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001).

In the case at bar, the plaintiff has adequately alleged that she was treated differently from other similarly situated employees. Whether or not this is true is a question of fact that the defendants have not adequately defeated in their pending motion. There is evidence that the plaintiff was treated differently because of her race and gender, in the alternative, if a jury does not find merit in this claim, the plaintiff was clearly treated differently from other similarly situated individuals.

**The Individual Defendants are NOT Entitled to Qualified Immunity**

In a section 1983 case, a municipal officer may be shielded from liability in his individual capacity based on qualified immunity if his conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Shechter v. Comptroller of the City of New York, 79 F.3d 265, 268 (2d Cir.1996).

The Supreme Court views qualified immunity as "ordinarily" being a question of law that should be determined when possible on a motion for summary judgment. Hunter v. Bryant, 502 U.S. 224, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991); *see* also Castro v. United States, 34 F.3d 106, 112 (2d Cir.1994). However, caught between a desire to eliminate the need for government officials to defend frivolous actions and the desire not to have summary judgment granted if there is any possible material issue of fact, the appellate courts have taken a somewhat erratic approach in civil rights cases toward the granting of summary judgment on qualified immunity grounds. *See generally* 1B Martin A. Schwartz & John E. Kirklin, *Section 1983 Litigation* § 9.34 (3d ed.1997). Of particular importance to this case, the Second Circuit has, as with other aspects of summary judgment, severely limited the ability of the trial courts to act. *See Castro,* 34 F.3d at 112; Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir.1994) (holding that the immunity issue should be decided by the court only where the facts concerning its availability are undisputed; otherwise, jury consideration is required), *cert. denied,* 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995); Frank v. Relin, 1 F.3d 1317 (2d Cir.), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993); Warren v. Dwyer, 906 F.2d 70, 74 (2d Cir.), *cert. denied,* 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990)

In the case at hand the facts are not undisputed. The plaintiff has presented evidence that she was treated differently than similarly situated employees. The defendants have asked the Court to consider their version of the facts and decide qualified immunity prior to jury consideration. Such an action is not consistent with the Second Circuit practice.

**Municipal Liability Under Monell**

13

"In order to establish municipal liability, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy. The inference that a policy existed maybe drawn from circumstantial proof, such as evidence that the municipality failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction, or evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges' that its agents were violating citizens' constitutional rights." DeCarlo v. Fry, 141 F.3d 57, 61-62 (2d Cir. 1998), quoting Ricciuti v. New York City Transit Auth., 941 F.2d 119, 122-23 (2d Cir. 1991). Cf., Thomas v. Roach, 165 F.3d 137, 145 (2d Cir. 1999).

When a policymaker becomes aware of an ongoing unconstitutional act and does not exercise his power to stop that act, his inaction is the same as an affirmative action violating those rights. "A decision by municipal policymakers on a single occasion may result in municipal liability under 42 U.S.C. § 1983 for actions it officially sanctioned or ordered." Dixon v. Lowery, 302 F.3d 857, 867 (8th Cir. 2002); Williams v. Butler, 863 F.2d 1398, 1401 (8th Cir. 1988).

There is evidence that policymakers were aware of the decision to terminate the plaintiff and failed to correct the situation. The inaction and ratification of the individual defendants decision makes Monell appropriate.

**CONCLUSION**

For the reasons stated above, the plaintiff respectfully request that the motion for summary judgment be denied.

BY: /s/ Cynthia R. Jennings
THE PLAINTIFF
CYNTHIA JENNINGS, ESQ
Federal Bar Number ct21797
THE BARRISTER LAW GROUP, LLC
211 State Street, 2nd Floor
Bridgeport, CT 06604
HER ATTORNEY

## **CERTIFICATION**

This is to certify that a copy of the Memorandum of Law in Support of Plaintiff's Objection to Defendant's Motion for Summary Judgment has been mailed, postage prepaid, on April 29, 2004.

Mark J. Sommaruga
Sullivan, Schoen, Campane & Connon, LLC
646 Prospect Avenue
Hartford, CT 06105

_____
CYNTHIA JENNINGS, ESQ