FILED

2004 MAY 13  A 10: 13

U.S. DISTRICT COURT
BRIDGEPORT, CONN

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JULIA JACKSON, | : | CIVIL ACTION NO. |
| Plaintiff | : | 3:02CV1777(AHN) |
| | : | |
| v. | : | |
| | : | |
| NORWALK BOARD OF EDUCATION, | : | |
| LOUIS LaBOSCO, DR. NORMAN | : | |
| ZAMCHECK, ART DOOLEY, and | : | |
| RICK FOLLMAN | : | |
| Defendants | : | MAY 13, 2004 |

### DEFENDANTS' REPLY BRIEF RE: MOTION FOR SUMMARY JUDGMENT

**I.   INTRODUCTION**

On February 15, 2004, the defendants filed their motion for summary judgment. On April 29, 2004, the plaintiff filed materials in opposition to the defendants' motion for summary judgment. Pursuant to Rule 7(d) of the Local Rules of Civil Procedure, the defendants hereby file this reply brief.

**II.   ARGUMENT**

    A.   **DESPITE THE PLAINTIFF'S ATTEMPT TO CREATE FACTUAL DISPUTE, THE UNDISPUTED MATERIAL FACTS PERMIT THIS COURT TO ENTER SUMMARY JUDGMENT.**

In an attempt to avoid summary judgment, the plaintiff attempts to highlight alleged factual disagreements so as to assert the need for a trial. "Mere conjecture or speculation" by

the party resisting summary judgment does not provide a basis upon which to deny the motion. <u>Western World Insurance Co. v. Stack Oil, Inc.</u>, 922 F.2d 118, 121 (2nd Cir. 1990). The defendants have provided sworn affidavits as the authenticity of the documentary evidence in question. Nevertheless, the plaintiff still tries to create factual dispute where there can be no plausible dispute. For example, the plaintiff tries to assert that somehow the June 6, 2000 evaluation of the plaintiff is not worthy of belief because the copy that was submitted with the defendants' motion for summary judgment did not contain the statement from the plaintiff at the foot of the document that she disagreed with the evaluation. ***Plaintiff's Memorandum, p. 5***. It is irrelevant to the adjudication of the motion for summary judgment whether the court considers 1) the copy of the evaluation that was written up originally by the defendant Zamcheck, which is dated June 6, 2000 and indicates in no uncertain terms that he would not recommend the plaintiff for rehiring due to the listed performance concerns, or 2) the version provided by the plaintiff, which is identical to the above-described document but contains a written comment by the plaintiff at the foot of the document that was added apparently on or after her June 6, 2000 meeting with Dr. Zamcheck, said comment which expresses her disagreement with the evaluation. It is irrelevant to this matter whether the plaintiff agrees or disagrees with the content of the evaluation. What is relevant is that the plaintiff admits what is contained in the evaluation, namely, that Dr. Zamcheck cited

LAW OFFICES • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

numerous examples of poor performance. *See Plaintiff's Admissions to Defendants' Local Rule 56(a) Statement ¶¶14, 15, 17, 21 and 23.*

The plaintiff asserts that she received an evaluation prior to this June 6, 2000 final evaluation that was favorable. *Plaintiff's Memorandum, p. 5*. However, the plaintiff does not provide a copy of this evaluation, which is understandable since it does not exist. The plaintiff does not provide an affidavit or any other documentation establishing the existence of such a favorable prior evaluation. The plaintiff further asserts that the June 6, 2000 non-renewal letter from defendant LaBosco did not make reference to the performance concerns but merely indicated that she was being non-renewed due to her status as a probationary employee. *Plaintiff's Memorandum, p. 5*. Although the plaintiff was not entitled to a statement of reasons, the plaintiff was informed by Dr. Zamcheck of the performance based concerns via the June 6, 2000 evaluation and the meeting that date with regard to the same. The fact that the June 6, 2000 letter does not regurgitate the reasons for the non-renewal is irrelevant, especially in light of the plaintiff's status as a probationary employee.

The plaintiff further states that her union contract/collective bargaining agreement does not make reference to the probationary period. *Plaintiff's Memorandum, p. 5*. However, that contract clearly contains a reference to such a probationary period.

***Defendants' Attachment D, pp. 17-18***. The plaintiff claims that other similarly situated male employees received a hearing before the end of the probationary period, ***Plaintiff's Memorandum, p. 6***. However, such a claim is clearly rebutted by the very terms of the collective bargaining agreement, which provides that a probationary employee can be non-renewed without any recourse or remedies. ***Attachment D, pp. 17-18***. Nevertheless, the plaintiff <u>admits</u> that she had a meeting with Dr. Zamcheck on June 6, 2000 with regard to her evaluation and non-renewal; ***Plaintiff's Material Fact in Dispute #6***; said meeting exceeds anything that was required under the collective bargaining agreement. The plaintiff does not even come close to establishing the existence of pretext for discrimination.

As for the disparate treatment claims with regard to alleged differing terms and conditions of employment, the defendants have provided clear and specific affidavits with regard to the speciousness of such claims. The plaintiff only rebuts this proffer by reference to a vague, April <u>2003</u> conclusory affidavit by Mr. John Mosby (former president of the plaintiff's union), and a conclusory statement that her terms of employment were "completely different." ***Plaintiff's Memorandum, p. 8***. Nothing in the plaintiff's filings comes close to rebutting the proffered reasons for the defendants' actions. It is also unclear as whether the plaintiff can rely upon excerpts from a November 15, 2003 deposition and an April 23, <u>2003</u> affidavit to rebut fresh (February 2004) affidavits from the defendants; indeed, many of the

statements in the defendants' affidavits remain largely unrebutted (i.e., the utter lack of disparate treatment vis-à-vis the "walkie talkie," uniform and lunch issues). Parenthetically, Mr. Mosby's conclusory attack upon the Connecticut State Board of Mediation and Arbitration and its hearing process highlights the worthless nature of his affidavit.

\*\*\*

Before delving further with regard to the lack of genuine disputed materials facts, it is worth noting that the plaintiff has not complied with Local Rule 56(a)(3), which mandates that each statement of material fact or denial of fact in the non-moving party's Local Rule 56(a)(2) Statement be followed by a specific citation to either admissible evidence and/or an affidavit. None of the plaintiff's "denials" of the defendants' Local Rule 56(a)(1) Statement are followed by such a specific reference to such evidence. In addition, the plaintiff's statement of material facts in dispute is at best supported by vague references. This lack of an evidentiary basis is fatal to the plaintiff's objection to summary judgment. Specifically, the plaintiff denies Paragraphs ##11-13 of the defendants' Local Rule 56(a)(1) Statement regarding the plaintiff's poor performance, but cites to no evidence to the contrary. Indeed, the plaintiff presents no proof that she was a qualified employee, nor does she rebut the performance concerns of Dooley and Zamcheck (as expressed in their affidavits and documentation) that establish clear and legitimate non-discriminatory reasons for the defendants' actions.

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

In addition to the procedural insufficiency of the plaintiff's Local Rule 56(a)(2) Statement, a closer review of the alleged "materials factual disputes" reveals that such disputes cannot be viewed as being material or colorable. In "Plaintiff's Material Fact In Dispute #1," the plaintiff claims that there was no mention in the Local 1042 union contract/collective bargaining agreement of the 90 day probationary period. However, a review of the agreement reveals precisely such a probationary period. ***Defendants' Attachment D, pp. 17-18.*** In "Plaintiff's Material Fact In Dispute #2," the plaintiff provides no evidentiary support for her claim of a dispute with regard to defendant Dooley's averment on the issue of the uniform. In "Plaintiff's Material Fact In Dispute #3," the plaintiff simply misreads the union contract with regard to lunch breaks; there is no such entitlement for a 27 ½ hour employee, since lunch breaks are given to regular, 40 hour/week employees. In "Plaintiff's Material Facts In Dispute ##4 and 8," the plaintiff provides no evidence to counter defendant Dooley's specific averment with regard to the reason for his change of the evaluation. In "Plaintiff's Material Fact In Dispute #6," the plaintiff actually admits that she met with Dr. Zamcheck with regard to her performance and that she received a copy of his evaluation with regard to her poor performance, thus rebutting her own claim that she was denied a chance to have a meeting over her non-renewal. In "Plaintiff's Material Fact In Dispute #7," the plaintiff creatively ignores the fact that there is clearly no recourse under the

6

union contract for probationary employee, nor were the defendants required to provide her with a copy of the union contract; the plaintiff cites to no authority for such a requirement. In "Plaintiff's Material Fact In Dispute #8," in addition to ignoring the fact that there is no evidence to rebut Zamcheck's affidavit and his specific averment with regard to the pressure put on him by Mr. Mosby to change the evaluation, the fact remains that there never was a rescission of the non-renewal of the plaintiff's employment. In "Plaintiff's Material Fact In Dispute #9," the plaintiff claims that she applied for summer employment at Norwalk High School on July 27, 2000; however, her own exhibit ("Exhibit P") shows that she applied for a full-time job at Norwalk High School, not a summer job. The plaintiff's claim that she thought that her non-renewal from employment via the June 6, 2000 letter only ended her employment at the Briggs School, and not with the Norwalk Public Schools in general, strains credulity. Finally, in "Plaintiff's Material Fact In Dispute #9," the plaintiff's conclusory attempt to impugn the qualifications of the person who received the Norwalk High School position (Tia Perry) falls flat, especially in light of the fact that Ms. Perry was (undisputedly) an African-American female!

Even if this court were to find that the plaintiff has established a *prima facie* case of discrimination, this court should still enter judgment for defendant Board of Education, as the defendant has legitimate non-discriminatory reasons for its actions. Once the defendant has

offered a legitimate, nondiscriminatory reason for its actions, the plaintiff, in order to survive a motion for summary judgment, "must put forth adequate evidence to support a rational finding that the legitimate nondiscriminatory reasons proffered by the employer were false, and that more likely than not the employee's ... race was the real reason for the discharge." Holt v. KMI-Continental, 95 F.3d 123, 129 (2nd Cir. 1996). The plaintiff has not provided evidence from which an inference of discrimination can be made, nor has she established a genuine issue of material fact with regard to: 1) her poor job performance, 2) that her poor performance (as opposed to her race, gender or other "irrational"/malicious basis) was the reason for her non-renewal, or 3) the lack of "pretext." Indeed, the plaintiff's own admissions as to Defendants' Local Rule 56(a) Statement ¶¶14, 15, 17, 21 and 23 would appear to be fatal to the plaintiff's attempt to avoid summary judgment.

### B.   OTHER LEGAL ERROR.

It is not clear from her previous filings whether the plaintiff's Equal Protection Clause claims are based upon her race/gender or due to her membership of a "class of one." ***Plaintiff's Memorandum, p 12***. If the claim is based upon race and gender, then the deficiencies in the plaintiff's Title VII claims equally doom her Equal Protection Clause claims. In addition, as set forth in their prior memorandum of law in support of their motion for summary judgment, a selective enforcement/class of one claim is also legally and factually deficient.

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

Finally, with regard to her response to the defendants' qualified immunity defense; ***Plaintiff's Memorandum, pp. 12-13***; the plaintiff still cannot establish that there is any basis for any liability for the individual defendants. For example, defendants Dooley and Follman only role in the alleged discriminatory actions was in causing the hiring of another African American female (albeit more qualified) for the Norwalk High School position. Defendants LaBosco also had no role in the day to day operations of the Briggs School. Defendants LaBosco and Zamcheck had no role in the decision not to hire the plaintiff for the Norwalk High School position. Parenthetically, Dooley is an African-American.

DEFENDANTS–NORWALK BOARD OF
EDUCATION, ET AL

By _____
Mark J. Sommaruga (ct09865)
Susan L. Gundersen (ct25246)
Sullivan, Schoen, Campane & Connon, LLC
646 Prospect Avenue
Hartford, CT 06105
Tel: (860)-233-2141
Fax: (860)-233-0516
email: msommaruga@sscc-law.com
email: sgundersen@sscc-law.com

## C E R T I F I C A T I O N

This is to certify that a copy of the foregoing was mailed via U. S. Mail, postage prepaid, to Cynthia R. Jennings, Esq., The Barrister Law Group, LLC, 211 State Street, Bridgeport, CT 06604, this 13th day of May, 2004.

_____
Mark J. Sommaruga

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326