UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|                              |   |                          |
|------------------------------|---|--------------------------|
|                              | : |                          |
| JULIA JACKSON,               | : |                          |
|         PLAINTIFF            | : |                          |
|                              | : |                          |
| v.                           | : | CIV. NO. 3:02CV1777 (AHN) |
|                              | : |                          |
| NORWALK BOARD OF EDUCATION,  | : |                          |
| ET AL,                       | : |                          |
|         DEFENDANTS           | : |                          |

**RECOMMENDED RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I.   INTRODUCTION

Julia Jackson brought this five count action alleging
employment discrimination on the basis of race and gender, and
intentional and negligent infliction of emotional distress,
against the Norwalk Board of Education ("the Board"); Louis
LaBosco, Director of Human Resources for the Board; Dr. Norman
Zamcheck, Principal of Briggs High School; Art Dooley, Security
Coordinator for Norwalk High School; and Rick Follman,
Housemaster of Norwalk High School.[1] In Count One, plaintiff
claims the Board violated Title VII of the Civil Rights Act of
1964, 42 U.S.C. §2000e et seq. ("Title VII").  In Count Two,
plaintiff claims the defendants violated her rights to Due
Process and Equal Protection under the Fourteenth Amendment to

---

[1] The Court previously dismissed Count Four and Count Five
(intentional and negligent infliction of emotional distress
respectively) pursuant to Rule 12(b)(6) of the Federal Rules of
Civil Procedure.  [Doc. #24 at 7-9.]

the United States Constitution.[2]  In Count Three, plaintiff
claims that the Board violated her rights under the Connecticut
Fair Employment Practices Act ("CFEPA").  Counts One and Three
are claims against the Board only; Count Two is a claim against
all defendants.  Jurisdiction for Counts One and Two is
predicated on 28 U.S.C. § 1331, the existence of a federal
question.  Count Three is predicated on 28 U.S.C. § 1367, this
court's supplemental jurisdiction.  Pending before the court is
defendants' Motion for Summary Judgment on all counts.  [Defs.'
Mot. (Doc. # 30)].  Plaintiff opposes the motion.  [Pl.'s Mot.
(Doc. # 35)].  For the reasons that follow, summary judgment is
GRANTED for all defendants on all counts.


II.  <u>STANDARD OF REVIEW</u>

     A moving party is entitled to summary judgment "if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with affidavits, if any, show that
there is no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law."  Fed.
R. Civ. P. 56(c).  The burden of establishing that there are no
genuine issues of material fact in dispute rests with the moving
party.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Gallo</u>

---

     [2] In the plaintiff's Opposition to Defendant's Motion to
Dismiss, the plaintiff withdrew her claim under the Due Process
Clause, but maintained her claim under the Equal Protection
Clause. [Doc #22 at pp. 3-5.]

v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223

(2d Cir. 1994).  In assessing the record, the court must resolve

all ambiguities and draw all inferences in favor of the party

against whom summary judgment is sought.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 255 (1986).  However, even when facts

are disputed, in order to defeat summary judgment, the nonmoving

party must offer enough evidence to enable a reasonable jury to

return a verdict in its favor.  Id. at 248.  If little or no

evidence supports the non-moving party's case, there is no

genuine issue of material fact and summary judgment may be

appropriate.  Gallo, 22 F.3d at 1223-24.  Disputed facts that are

not material to the issues in the case may not defeat summary

judgment.  Hemphill v. Schott, 141 F.3d 412, 416 (2d Cir. 1988).

See also Anderson, 477 U.S. at 247-248.


III.  UNDISPUTED FACTS[3]

     The following facts are undisputed.[4]

---

[3] The court notes that plaintiff did not comply with Local
Rule 56(a)(3), (formerly Local Rule 9(c)).  Local Rule 56 (a)(3)
states that each statement or denial of material fact in the non-
moving party's Local Rule 56(a)(2) statement must be followed by
specific citation to admissible evidence and/or an affidavit.
Failure to supply specific citations may result in sanctions,
including, when the opponent fails to comply, an order granting
the motion.  Despite counsel's error in this regard, the court
will adjudicate the motion on its merits so that the plaintiff be
fully heard on her claims.
[4] The following documents were considered: Pl.'s Local Rule
56 (a)(3); Defs.' 56(a)1 Stat.; Pl.'s 9(c)2 Stat.; Pl.'s Second
Am. Compl. ¶ 11; Defs.' Answer to Second Am. Compl. ¶ 11; AFSCME
Local 1042 Contract; Jackson Dep.; Arbitration Award; CHRO

1.  Plaintiff, Julia Jackson, an African-American female, was employed from on or about March 16, 2000 to June 16, 2000 as a security monitor at Briggs High School in Norwalk, Connecticut.  [Pl.'s Second Am. Compl. ¶¶ 3, 6; Defs.' 56(a)1 Stat. ¶¶ 1,18; Pl.'s 9(c)2 Stat. ¶¶ 1, 18.]

2.  The job posting for the Security Monitor position indicated that the position required twenty-seven and a half hours per week, and that there would be no benefits provided.  [Defs.' 56(a)1 Stat. ¶ 3; Pl.'s 9(c)2 Stat. ¶ 3.]

3.  The decision to hire plaintiff was made by Principal Norman Zamcheck and Louis LaBasco, Director of Human Resources, after a committee including Principal Zamcheck interviewed plaintiff.  [Defs.' 56(a)1 Stat. ¶ 4; Pl.'s 9(c)2 Stat. ¶ 4.]

4.  Plaintiff reported to and was supervised on a daily basis by Principal Zamcheck.  Plaintiff was also supervised by Art Dooley, Head of Security.  [Defs.' 56(a)1 Stat. ¶¶ 11-12; Jackson Dep. at 25-26.]

5.  As a new employee of the Board, plaintiff was subject to a ninety-day probationary period.[5] The AFSCME

---

Review.]

[5]Although the plaintiff asserts in her 9(c)2 statement that the ninety-day probation period is not mentioned in the Local 1042 Contract Book, the probation period is clearly noted on page

Local 1042 contract states the probationary period is a "break-in time" during which the employer (the Board) may dismiss an employee without further recourse on the employee's part. The contract also indicates that all employees who work successfully for ninety days shall be known as permanent employees. [Pl.'s Second Am. Compl. ¶ 11; Defs.' Answer to Second Am. Compl. ¶ 11; AFSCME Local 1042 Contract at 17-18.]

6.    Briggs High School is an "alternative" high school. Students are enrolled at Briggs High School because they did not function appropriately in the regular high school environment. Many of the students had discipline problems, were expelled from regular public school or were involved in the juvenile court system. Briggs High School has fewer students than other high schools in Norwalk, and a shortened day that ends at 12:45 p.m. [Defs.' 56(a)1 Stat. ¶ 2; Pl.'s 9(c)2 Stat. ¶ 2; Jackson Dep. at 86.]

7.    Plaintiff was the only security monitor at Briggs High School. Her main duties were to supervise students inside and outside the school, to ensure the safety of students and staff, and to protect the

---

17 of the contract. [Pl.'s 9(c)2 Stat. ¶ 1; AFSCME Local 1042 Contract at 17.]

school's property.  Plaintiff's position required her
to patrol the hallways and school grounds and to
supervise students as they passed between classes.
[Defs.' 56(a)1 Stat. ¶ 5; Pl.'s 9(c)2 Stat. ¶ 5;
AFSCME Local 1042 Contract App. at 17a.]

8.  Plaintiff was not provided with a walkie-talkie or a
uniform. [Defs.' 56(a)1 Stat. ¶¶ 8-9; Pl.'s 9(c)2
Stat. ¶ 9.]

9.  Most security monitors at other schools in Norwalk
worked with walkie-talkies.  At the time plaintiff
was hired, Briggs High School had no functional
walkie-talkies.  The current security monitor at
Briggs High School does not use a walkie-talkie.
[Defs.' 56(a)1 Stat. ¶ 9; Pl.'s 9(c)2 Stat. ¶ 9.]

10. The job posting for the position indicated that a
uniform was required, but as a practice, a uniform
was not mandatory until an employee successfully
completed the probationary period.  The uniform
requisition process required an employee to purchase
the uniform from an approved vendor and then the
Board reimbursed the employee.  [Defs.' 56(a)1 Stat.
¶ 8; Pl.'s 9(c)2 Stat. ¶ 8.]

11. On June 6, 2000, plaintiff and Principal Zamcheck met
and discussed her performance.  During the meeting,

plaintiff was shown a copy of her performance evaluation. Plaintiff read and signed the evaluation. [Defs.' 56(a)1 Stat. ¶ 13; Jackson Dep. at 32-33.]

12. Plaintiff's evaluation noted that plaintiff did not sufficiently cover the area between (the school's) buildings or control the students during break times. In addition, it indicated that plaintiff became "overly excited and stressed" with students and that she was not able to control the students. Plaintiff received unsatisfactory markings in the categories of "recognizes others' priorities" and being "proactive." The recommendation of the evaluation was to not rehire plaintiff for the 2000-2001 school year. [Defs.' 56(a)1 Stat. ¶ 14; Pl.'s 9(c)2 Stat. ¶ 14; Jackson Dep. at 34-36.]

13. Following the performance evaluation, Principal Zamcheck and Mr. LaBosco decided to not rehire plaintiff for the 2000-2001 school year. [Defs.' 56(a)1 Stat. ¶¶ 15, 17; Pl.'s 9(c)2 Stat. ¶¶ 15, 17.]

14. By a letter dated June 6, 2000, Mr. LaBosco informed plaintiff that her probationary period had expired and that her employment would not be renewed for the 2000-2001 school year. [Defs.' 56(a)1 Stat. ¶ 15;

Pl.'s 9(c)2 Stat. ¶ 15.]

15.  Plaintiff remained in the security monitor position until June 16, 2000, the end of the school year. [Defs.' 56(a)1 Stat. ¶18; Pl.'s 9(c)2 Stat. ¶ 18.]

16.  On June 16, 2000, Principal Zamcheck met with plaintiff and Local 1042 President John Mosby to discuss the June 6, 2000, evaluation of plaintiff. [Defs.' 56(a)1 Stat. ¶ 20; Pl.'s 9(c)2 Stat. ¶ 20.]

17.  During the June 16, 2000, meeting Principal Zamcheck explained that he thought plaintiff was not suited for the security monitor position because she was "too nice" and not "tough enough". [Defs.' 56(a)1 Stat. ¶ 21; Pl.'s 9(c)2 Stat. ¶ 21.]

18.  Principal Zamcheck changed his evaluation of plaintiff to reflect satisfactory marks; however, the decision to not renew plaintiff's employment was never changed. [Defs.' 56(a)1 Stat. ¶ 23; Pl.'s 9(c)2 Stat. ¶ 23.]

19.  Throughout plaintiff's employment at Briggs High School, she had no arguments or problems with any of the defendants. [Defs.' 56(a)1 Stat. ¶¶ 24-25; Pl.'s 9(c)2 Stat. ¶¶ 23-25.]

20.  On July 27, 2000, plaintiff applied for a security monitor position at Norwalk High School.  [Defs.'

8

56(a)1 Stat. ¶ 27; Pl.'s 9(c)2 Stat. ¶ 27.]

21.   Art Dooley, Head of Security, and Richard Follman,
      Housemaster of Norwalk High School, interviewed
      plaintiff in early August.  Art Dooley is of African-
      American descent.  [Defs.' 56(a)1 Stat. ¶ 28; Pl.'s
      9(c)2 Stat. ¶ 28.]

22.   Other interviewees included Tia Perry, an African-
      American female; Deon Hardison, an African-American
      male; and James Dupre, an African-American male.
      [Defs.' 56(a)1 Stat. ¶ 29; Pl.'s 9(c)2 Stat. ¶ 29.]

23.   Mr. Dooley and Mr. Follman selected Tia Perry, an
      African-American female, for the security monitor
      position at Norwalk High School.  [Defs.' 56(a)1
      Stat. ¶ 32; Dooley Aff. ¶ 20.]

24.   The Board currently employs and has previously
      employed minorities to work as monitors and security
      guards.  [Defs.' 56(a)1 Stat. ¶ 34; Pl.'s 9(c)2 Stat.
      ¶ 34.]

25.   The Board has a practice of giving current employees
      or employees who have been laid off first
      consideration for job postings.  [Defs.' 56(a)1 Stat.
      ¶ 30; Pl.'s 9(c)2 Stat. ¶ 30.]

26.   Plaintiff brought a grievance as a member of Local
      1042, AFSCME, claiming that she was unjustly denied

9

the Norwalk High School security monitor position.
The arbitration award concluded that the plaintiff
had no status that entitled her to be given first
consideration for the position.  [Defs.' 56(a)1 Stat.
¶ 31; Pl.'s 9(c)2 Stat. ¶ 31; Arbitration Award at
2.]

27. On September 13, 2000, plaintiff filed a complaint
against the Board with the Connecticut Commission on
Human Rights and Opportunities ("CHRO"), alleging
race and gender discrimination.  The CHRO dismissed
the plaintiff's claim pursuant to the Merit
Assessment Review ("MAR") process, on the grounds
that there was no reasonable possibility that further
investigation would result in a finding of reasonable
cause.  Plaintiff's request for reconsideration was
also rejected.  [Defs.' 56(a)1 Stat. ¶ 33; Pl.'s
9(c)2 Stat. ¶ 33; CHRO Review at 1-3.]

IV.   <u>DISCUSSION</u>

     A.   <u>Title VII and Connecticut Fair Employment Practices Act</u>
           <u>Claims - Briggs High School</u>[6]

     Under Title VII, it is unlawful for employers to discharge,
fail to hire, or otherwise discriminate against any individual on
the basis of his or her race, color or sex.  42 U.S.C. §2000e-
2(a)(1).  Analysis of a plaintiff's discrimination claim involves
the well-established three-part burden-shifting test of <u>McDonnell</u>
<u>Douglas Corp. v. Green</u>, 411 U.S. 792, 677 (1973).  The first part
of the test requires a plaintiff to establish, by a preponderance
of evidence, a prima facie case of racial discrimination.  <u>Id.</u>
This may be done by showing (i) that she is a member of a
protected class; (ii) that she was competent and was qualified in
her job or for the position to which she applied; (iii) she
suffered an adverse employment decision or action; (iv) and the
decision or action occurred under circumstances giving rise to an
inference of discrimination.  <u>Reeves v. Sanderson Plumbing</u>
<u>Products, Inc.</u>, 530 U.S. 133, 142 (2000); <u>Rexach</u>, 2004 U.S. Dist.
LEXIS 6231, at *9.  If a plaintiff is able to establish a prima

---

    [6] Connecticut courts look to federal law for guidance in
enforcing Connecticut's anti-discrimination statute, the
Connecticut Fair Employment Practices Act ("CFEPA"), and the
analysis of a discrimination claim is the same under both. <u>Craine</u>
<u>v. Trinity College</u>, 259 Conn. 625, 637 (2002); <u>State of Conn. v.</u>
<u>Comm'n on Human Rights and Opportunities</u>, 211 Conn. 464, 470
(1989); <u>Grey v. City of Norwalk Board of Education</u>, 304 F. Supp.
2d 314, 328 (D. Conn. 2004).  Therefore this court will analyze
plaintiff's Title VII and CFEPA claims in concert.

facie case of discrimination, the burden then shifts to the employer to provide legitimate nondiscriminatory reasons for the employee's rejection. <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802. However, even if the defendant is able to establish legitimate nondiscriminatory reasons for the employee's rejection, the plaintiff is given an opportunity to demonstrate that the defendant's reason for rejection was a pretext for discrimination.  <u>Id.</u> at 804-05.  For the case to continue, plaintiff must produce not simply "some" evidence, but rather, "sufficient evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the adverse employment action."  <u>Weinstock v. Columbia University</u>, 224 F.3d 33, 42 (2d Cir. 2000).

A plaintiff's burden of establishing the first part of the test, proving a prima facie case of employment discrimination, is "minimal".  <u>Collins v. New York City Transit Auth.</u>, 305 F.3d 113, 118 (2d Cir. 2002).  In addition, the prima facie requirement in a given case will depend on the specific facts in question, because facts vary in different employment cases.  <u>McGuinness v. Lincoln Hall</u>, 263 F.3d 49, 54 (2d Cir. 2001) (citing <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802).

An inference of discrimination may arise if a plaintiff can show that she was treated differently than similarly situated

employees of a different race or gender.  Shumway v. United
Parcel Service, 118 F.3d 60, 63 (2d Cir. 1997); Diggs v. Town of
Manchester, 303 F. Supp. 2d 163, 176 (D. Conn. 2004).  A
plaintiff must show that she shared sufficient employment
characteristics with the comparator so that they may be similarly
situated.  McGuinness, 263 F.3d at 53.  To be similarly situated,
the individuals with whom the plaintiff compares herself must be
similarly situated in all material respects.  Shumway, 118 F.3d
at 64.  An employee is similarly situated in all material
respects when an employee has a situation sufficiently similar to
the plaintiff's to support at least a minimal inference that the
difference in treatment may be attributable to discrimination.
McGuinness, 263 F.3d at 54.  What constitutes "all material
respects" is judged partly on whether the plaintiff and those
with whom she compares herself were subject to the same workplace
standards.  Etienne v. Wal-Mart Stores, Inc., 186 F. Supp. 2d
129, 135 (D. Conn. 2001)(citing Norville v. Staten Island Univ.
Hosp., 196 F.3d 89, 96 (2d Cir. 1999)).

     The plaintiff has satisfied the first and third elements of
the McDonnell Douglas test.  Defendants assert that plaintiff has
not satisfied the second element of the test, because they claim
that plaintiff's job performance was unsatisfactory.  It is
undisputed that plaintiff signed her performance evaluation,
which indicated unsatisfactory marks and noted that she did not

sufficiently cover the area between (the school's) buildings, or
control the students during break times, and that she became
"overly excited and stressed" with students.  [Defs.' 56(a)1
Stat. ¶ 13; Jackson Dep. at 32-33.]  Still, plaintiff claims that
she did not agree with the evaluation. [Defs.' 56(a)1 Stat. ¶ 14;
Pl.'s 9(c)2 Stat. ¶ 14; Jackson Dep. at 34-36.]  In addition,
Principal Zamcheck later changed his evaluation of plaintiff to
reflect satisfactory marks after meeting with plaintiff and Local
1042 President John Mosby, even though the decision to not renew
plaintiff's employment was never changed.  [Defs.' 56(a)1 Stat.
¶¶ 20, 23; Pl.'s 9(c)2 Stat. ¶¶ 20, 23.]  However, bearing in
mind that all inferences must be drawn in favor of plaintiff, the
court will assume that plaintiff has satisfied the second element
of the McDonnell Douglas test.

Plaintiff asserts that she satisfies the fourth element of
the McDonnell Douglas test because she was treated differently
than similarly situated white male employees in the following
ways:  plaintiff was forced to eat lunch after school; she was
not given a walkie-talkie; she was not provided with a uniform;
she was not granted a hearing before being terminated; she worked
thirty hours per week and was denied benefits; she did not
receive the Local 1042 Contract book; and she was not informed of
the ninety-day probationary period.

For each of these claims, however, plaintiff has not

14

identified the group of employees to whom she compares herself. She has not identified in her opposition memorandum nor in her sole affidavit any individuals similarly situated to her who were treated differently in the ways she alleges. She has failed to offer any evidence that supports her claims of disparate treatment. For these reasons, plaintiff has not met her prima facie burden to demonstrate that her non-renewal at Briggs and the rejection of her application to Norwalk High School occurred under circumstances giving rise to an inference of discrimination.

First, plaintiff claims that she was forced to eat lunch after school while other Norwalk security monitors were permitted to take a lunch break during the school day. [Doc. # 36 at 9.] This claim fails to support an inference of discrimination because plaintiff was not similarly situated to any other security monitors in Norwalk in respect to the lunch hour. Briggs High School has a shortened day that ends at 12:45 p.m., and plaintiff ate lunch at the same time as the rest of the staff at Briggs, at the end of the school day.

Plaintiff asserts that, unlike other monitors in Norwalk, she was denied the use of a walkie-talkie. [Doc. # 36 at 8-9.] Defendants assert that this is not evidence of disparate treatment because the walkie-talkies at Briggs were either broken or stolen; plaintiff was the only monitor at Briggs and had no

15

need for a walkie-talkie; plaintiff's replacement did not have
the use of the walkie-talkie; and plaintiff did not request a
walkie-talkie. [Doc. # 31.] Plaintiff does not dispute that there
are no functional walkie-talkies at Briggs or that the current
monitor at Briggs does not use a walkie-talkie [Pl.'s 9(c)2 Stat.
¶ 9], and does not claim that she requested a walkie-talkie and
was refused. Under these circumstances, the court agrees with
defendants that plaintiff was not similarly situated with respect
to other monitors who were provided with walkie-talkies within
the Norwalk school system.

Plaintiff also asserts that, unlike other monitors, she was
not provided with a uniform. [Doc. # 36 at 8.] In practice,
however, a uniform is only required for permanent employees.
[Defs.' 56(a)1 Stat. ¶ 8; Pl.'s 9(c)2 Stat. ¶ 8.]  The uniform
requisition process requires an employee to purchase the uniform
from an approved vendor and then be reimbursed by the employer.
[Id.]  Plaintiff has provided no evidence that she sought and was
denied reimbursement for a uniform, or that other probationary
employees were provided with a uniform under differing
circumstances.

Plaintiff claims that, unlike others similarly situated, she
was not granted a hearing prior to the non-renewal of her
employment. [Doc. # 26 ¶ 19.] Plaintiff's evidence is an
affidavit by John Mosby stating generally that other white male

16

probationary employees were given a hearing, with their union representative present, prior to termination. [Aff. John Mosby ¶ 9.] The affidavit, however, fails to identify any individuals who were granted such a hearing. Plaintiff also acknowledges that she did have a meeting concerning her non-renewal on June 6, 2000, at which she discussed her performance and evaluation. [Pl.'s Material Facts in Dispute ¶ 6.] A second meeting among plaintiff, John Mosby, and Principal Zamcheck occurred on June 16, 2000, at the end of her probationary period, to discuss plaintiff's non-renewal. However, the decision not to renew plaintiff's employment was not changed. Because plaintiff was granted two meetings, one at which a union representative was present, she was not treated differently than other probationers prior to the non-renewal of her employment at Briggs.[7]

Plaintiff claims that, although her position required her to work twenty-seven and a half hours per week, she actually worked thirty hours per week, and that white male employees who worked thirty hours or more per week were given benefits, which she was denied. [Doc. # 26 ¶ 7-10.] However, pursuant to the Local 1042

_____

[7] Plaintiff raises an issue that, unlike the version of the performance evaluation submitted by plaintiff, the version submitted by the defendants does not contain plaintiff's handwritten statement at the bottom stating that she did not agree with the contents of the evaluation. Plaintiff does not contend, however, that the text of the two versions was otherwise inconsistent, nor does she dispute that she signed the evaluation. Because there is no dispute about the actual text of the evaluation, the fact that the defendants' version does not reflect plaintiff's comment is immaterial.

17

contract, only employees who work forty hours or more per week
are entitled to benefits. [AFSCME Local 1042 Contract at 2, 21.]
Thus, even if plaintiff worked thirty hours per week, she would
not have been entitled to benefits. Plaintiff provided no
evidence that similarly situated white male probationary
employees who worked thirty hours per week were provided with
benefits.

Plaintiff claims that, unlike similarly situated white male
employees, she did not receive the Local 1042 contract book
[Pl.'s Material Facts in Dispute ¶ 7], and was not informed in
writing of the ninety-day probationary period. [Pl.'s Second Am.
Compl. [Doc. # 26] ¶ 12; Doc. # 36 at 5.] Plaintiff proffers no
evidence showing other security monitors received the contract
book. Her only evidence concerning notice of the probationary
period is the Mosby affidavit, which states generally that
"custodians, maintenance workers, truck drivers, and asst head
custodians" were notified in writing of the probationary period.
[AFSCME Local 1042 Contract at 17; Aff. John Mosby ¶ 8.] Aside
from this general assertion, the affidavit does not offer any
specific names of persons similarly situated to plaintiff who
received such written notice, and is not sufficient proof of the
alleged disparate treatment.

Although plaintiff's burden is minimal, she has failed to
offer any evidence showing she was treated differently than

18

similarly situated employees which raises an inference of
discrimination sufficient to satisfy the fourth element of the
MacDonnell Douglas test.

In some situations, however, a plaintiff may establish the
inference of discriminatory intent without alleging disparate
treatment.  The inference of discriminatory intent could be drawn
in several circumstances including, but not limited to: the
employer's continuing after discharging the plaintiff, to seek
applications from persons with the plaintiff's qualifications to
fill the position; or the employer's criticism of the plaintiff's
performance in ethnically degrading terms; or its invidious
comments about others in the employee's protected group; or the
more favorable treatment of employees not in the protected group;
or the sequence of events leading to the plaintiff's discharge.
Adbu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir.
2001); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir.
1994).  Plaintiff appears to argue that further evidence raising
an inference of discrimination exists, yet proffers no such
evidence.  She asserts that there was a positive evaluation prior
to the June 6, 2000 letter, but has not provided a copy nor any
other evidence of a prior positive evaluation.  Additionally,
contrary to plaintiff's assertion, the fact that the June 6, 2000
non-renewal letter does not specifically cite performance reasons
for plaintiff's discharge does not raise an inference of

19

discrimination because plaintiff was already aware of the proffered reasons as a result of the meeting and the signed evaluation, even if she disagreed with these reasons.

In addition, when the same person made the decision to hire and fire, and when the termination of employment occurs within a relatively short period of time, it is difficult to infer an invidious motive that would be consistent with an inference of discrimination, given that the plaintiff's race and gender were clearly known by that person at the time of hire. See Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000)(the fact that the same person hired and fired plaintiff is highly relevant in showing age discrimination unlikely); Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991)("it hardly makes sense to hire workers from a group one dislikes only to fire them once they are on the job"). In this case, the decision not to renew the plaintiff's employment was made by the same individuals who hired plaintiff, Principal Zamcheck and Mr. LaBasco, less than three months after she was hired. These facts further undermine plaintiff's claim of race and gender discrimination.

Because the plaintiff has failed to offer any evidence in support of her claim, the defendants' Motion for Summary Judgment with respect to her employment at Briggs High School is GRANTED.

B.    Title VII and CFEPA Claims -Norwalk High School

Under Title VII, a plaintiff makes out a prima facie case
for disparate treatment in hiring by showing (1) that she is a
member of a protected class; (2) that she actually applied for
the position sought and was qualified; (3) that she was not
hired; and (4) that the position remained open or was filled by a
person not a member of plaintiff's protected class.  McCall v.
City of Danbury, 116 F. Supp. 2d 316, 319 (D. Conn. 2000)(citing
McDonnell Douglas Corp., 411 U.S. 792).  Plaintiff fails to make
out a prima facie case for disparate treatment in hiring because
the candidate selected for the position, Tia Perry, is an
African-American female, a member of the plaintiff's protected
class.  Defendants' Motion for Summary Judgment with respect to
the Norwalk High School position is GRANTED.


C.    Equal Protection Claims

In Count Two, plaintiff makes a claim pursuant to 42 U.S.C.
§ 1983, 42 U.S.C. §§ 2000e, et seq. that the defendants violated
her rights to Equal Protection under the Fourteenth Amendment to
the United States Constitution.  Section 1983 provides that if
any person, acting under color of state law, deprives another
person of a right, privilege or immunity secured by the
Constitution or federal laws, that person shall be liable to the
party injured.  42 U.S.C. § 1983.  Section 1983 does not create

21

substantive rights, but it provides a means to address the deprivation of a federal right guaranteed elsewhere. Diggs, 303 F. Supp. 2d at 182. It is unclear from plaintiff's memorandum whether her equal protection claim is based upon race and/or gender discrimination or on membership in a "class of one". Under either analysis, plaintiff's claim fails.

Employment discrimination claims under § 1983 based on race or gender are subject to the same McDonnell Douglas burden shifting analysis as claims brought under Title VII. Sorlucco v. New York City Police Dep't, 888 F.2d 4, 7 (2d Cir. 1989). As previously discussed, plaintiff failed to make a prima facie showing of discrimination in the non-renewal of her employment at Briggs High School, or in the rejection of her application for the Norwalk High School position. Therefore, if the plaintiff's Equal Protection claim is predicated on race or gender, her claim fails.

In addition, plaintiff has not provided sufficient evidence to withstand summary judgment in regards to an Equal Protection "class of one" claim. In order to establish a cause of action under the Equal Protection clause based on a "class of one", a plaintiff must demonstrate that she is the victim of intentional and arbitrary discrimination, in that she has been intentionally treated differently than from others similarly situated, and that there is no rational basis for the difference in treatment. Lyon

22

v. Jones, Edwards, Reynolds, and Office of the Attorney General, 260 F. Supp. 2d 507, 513 (D. Conn. 2003), citing Village of Willowbrook v. Olech, 528 U.S. 562, 564-65 (2000).  Where plaintiff does not claim selective treatment based on race or gender, the plaintiff must demonstrate that the defendants had a "malicious intent to injure" the plaintiff. Crowley v. Courville, 76 F.3d 47, 52-53 (1996). A demonstration of different treatment from persons similarly situated, without more, does not suffice to establish malice or bad faith. Id.

Plaintiff has not provided any evidence from which a reasonable jury could possibly find that she was intentionally treated differently than similarly situated employees, and that such treatment is indicative of discrimination.  Plaintiff has not provided any evidence of vindictive action, illegitimate animus, or ill will on the part of defendants.  There is no evidence that the defendants' actions were irrational and wholly arbitrary.  Plaintiff has provided no evidence of malice, nor has she provided evidence that the defendants intentionally singled her out for different treatment.   Thus, if the plaintiff's claim is predicated on a "class of one", her claim fails.

Therefore, defendants' Motion for Summary Judgment on Count Two is GRANTED.

23

V.  Conclusion

        For the reasons discussed above, the defendants' Motion for
Summary Judgment [**Doc. # 30**] on all counts is **GRANTED**.


        Any objection to this recommended ruling must be filed with
the Clerk of the Court within ten (10) days of the receipt of
this order.  Failure to object within ten (10) days may preclude
appellate review.  See 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and
6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local
Rules for United States Magistrates; Small v. Secretary of
H.H.S., 892 F.2d 15 (2d Cir. 1989)(per curiam); F.D.I.C. v.
Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).



        Dated at Bridgeport, this 9th day of September, 2004.


                    ___/s/_____
                    HOLLY B. FITZSIMMONS
                    UNITED STATES MAGISTRATE JUDGE

24